JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

AEROTEK, INC.

**DEFENDANTS**

BEACON HILL STAFFING GROUP, LLC

**(b)** County of Residence of First Listed Plaintiff    Anne Arundel , Maryland
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Matthew J. Hank, Jonathan L. Shaw
Littler Mendelson, PC, 1601 Cherry St., Ste. 1400,
Phila., PA 19102, 267.402.3000

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |

☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(a)
Brief description of cause:
TORTIOUS INTERFERENCE WITH CONTRACT

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $
in excess of $150,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐No

**VIII. RELATED CASE(S) IF ANY**

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
06/22/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: **7301 Parkway Drive South, Hanover, MD 21076**

Address of Defendant: **c/o Corporation Service Company, 2595 Interstate Drive, Suite 103 Harrisburg, PA 17110**

Place of Accident, Incident or Transaction: **Montgomery County, Pennsylvania and Philadelphia, Pennsylvania**

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

| | | Yes | No |
|---|---|---|---|
| 1. | Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | | ✓ |
| 2. | Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? | | ✓ |
| 3. | Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? | | ✓ |
| 4. | Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? | | ✓ |

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: **06/22/2018**    *Attorney-at-Law / Pro Se Plaintiff*    **316882**
                                                               *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

*A.    Federal Question Cases:*

- [ ] 1. Indemnity Contract, Marine Contract, and All Other Contracts
- [ ] 2. FELA
- [ ] 3. Jones Act-Personal Injury
- [ ] 4. Antitrust
- [ ] 5. Patent
- [ ] 6. Labor-Management Relations
- [ ] 7. Civil Rights
- [ ] 8. Habeas Corpus
- [ ] 9. Securities Act(s) Cases
- [ ] 10. Social Security Review Cases
- [ ] 11. All other Federal Question Cases
     *(Please specify): _____*

*B.    Diversity Jurisdiction Cases:*

- [ ] 1. Insurance Contract and Other Contracts
- [ ] 2. Airplane Personal Injury
- [ ] 3. Assault, Defamation
- [ ] 4. Marine Personal Injury
- [ ] 5. Motor Vehicle Personal Injury
- [ ] 6. Other Personal Injury (Please specify): _____
- [ ] 7. Products Liability
- [ ] 8. Products Liability – Asbestos
- [x] 9. All other Diversity Cases
     *(Please specify):* ___Tortious Interference With Contract___

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, **Jonathan L. Shaw**, counsel of record *or pro se plaintiff*, do hereby certify:

- [x] Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- [ ] Relief other than monetary damages is sought.

DATE: **06/22/2018**    *Attorney-at-Law / Pro Se Plaintiff*    **316882**
                                                               *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| AEROTEK, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BEACON HILL STAFFING GROUP, LLC | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                         ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                                   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                             ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.             (X)

| | | |
|---|---|---|
| June 22, 2018 | Jonathan Shaw | Aerotek, Inc. |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 267.402.3044 | 267.402.3131 | jlshaw@littler.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AEROTEK, INC.,**<br>**7301 Parkway Drive South**<br>**Hanover, MD 21076**<br><br>         Plaintiff,<br><br>   v.<br><br>**BEACON HILL STAFFING GROUP, LLC**<br>**c/o Corporation Service Company**<br>**2595 Interstate Dr**<br>**Suite 103**<br>**Harrisburg, PA 17110**<br><br>        Defendant. | No. _____ |

## COMPLAINT

Plaintiff Aerotek, Inc. ("Aerotek"), by counsel, brings this Complaint against Defendant Beacon Hill Staffing Group, LLC ("Beacon Hill") as follows:

## NATURE OF THE ACTION

1.      Through its hiring and continued employment of a former Aerotek employee subject to a non-compete restriction, Christine Obercian ("Obercian"), Beacon Hill tortiously interfered with Aerotek's rights under her written Employment Agreement ("Agreement"). Aerotek sued Obercian to enforce her non-compete in a lawsuit brought on April 6, 2017 in the United States District Court for the District of Maryland pursuant to a forum selection clause in Obercian's Agreement ("Maryland Litigation"). Beacon Hill agreed to pay Obercian's attorneys' fees in the Maryland Litigation, and hired counsel to represent her. She filed a counterclaim for alleged wages owed, and the case is ongoing. However, Aerotek recently learned that Obercian resigned her employment with Beacon Hill, scheduling March 28, 2018 as her last day of work.

Aerotek now brings this tortious interference case against Beacon Hill in this Court, which encompasses the location where Obercian worked for Beacon Hill.  Aerotek seeks damages from Beacon Hill based on its wrongful interference with Aerotek's contractual rights, including the attorneys' fees incurred in the Maryland Litigation as well as other damages for lost business. Aerotek also seeks punitive damages against Beacon Hill, an inveterate tortfeasor that has, upon information and belief, been sued no less than 20 times for interference with contract rights, based on its willful, wanton, and reckless disregard for the consequences of its acts.

## PARTIES

2.      Aerotek is a Maryland corporation with its principal place of business located in the State of Maryland.  Aerotek is registered to do business in Pennsylvania and maintains an office in Wayne, Pennsylvania.

3.      Beacon Hill is a limited liability company organized under the laws of the Commonwealth of Massachusetts. Its headquarters and principal place of business are located at 152 Bowdoin Street, Boston, Massachusetts 02108.  Beacon Hill has offices in King of Prussia, where Obercian works, and also in Philadelphia. Upon information and belief, none of Beacon Hill's members are citizens of the State of Maryland.

## JURISDICTION AND VENUE

4.      Aerotek and Beacon Hill are citizens of different states. The amount in controversy is in excess of $75,000, exclusive of interest and costs.  Subject matter jurisdiction is therefore proper under 28 U.S.C. § 1332(a).

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred or are occurring in this district.

2

## GENERAL BACKGROUND

6.     Aerotek is engaged in the business of recruiting, employing and providing the services of technical and other personnel on a temporary or permanent basis to companies focusing on a variety of industries, including the scientific and pharmaceutical space that involves science and medical personnel, throughout the United States, including the greater Philadelphia area.

7.     Aerotek invested and continues to invest considerable resources to develop information, methods, and techniques to:  (a) identify entities that utilize professional placement services to fill staffing needs; (b) identify the key individuals responsible for recruitment of professional employees within those entities; (c) maintain, develop and nurture business relationships with those entities and individuals; (d) learn clients' business, staffing, and solutions needs; (e) develop innovative solutions to meet clients' staffing and other needs, including clinical trial-related solutions; (f) develop, screen, and maintain highly-qualified candidates for placement with its clients; and (g) set appropriate pricing to attract and maintain clients.

8.     The information described in Paragraph 7 is valuable, confidential, and proprietary to Aerotek, and is not generally known in the public domain.

9.     Individuals employed by Aerotek who are involved in staffing and providing clinical solutions services, *inter alia*, become inexorably and intimately knowledgeable regarding Aerotek's clients, financial information regarding its clients' rates, its contacts for those clients, its clients' needs, and the candidates Aerotek has or may have to fill those needs.

10.     The aforementioned information has significant economic value to Aerotek and would be of significant economic value to competitors in the professional recruitment and placement industry.

11.     To protect its legitimate business interests with respect to the aforementioned information, Aerotek requires that the individuals it employs to conduct professional

recruitment/placement and clinical solutions sign restrictive covenants and non-disclosure agreements as a condition of employment. Aerotek also maintains its client and candidate information in secure, password-protected databases.

## OBERCIAN'S EMPLOYMENT WITH AEROTEK

12.    On or about January 13, 2014, Aerotek hired Obercian for the position of Operations Manager – Clinical Solutions for Aerotek Clinical Solutions ("ACS"), a division of Aerotek's affiliate, Aerotek Scientific, LLC. Obercian's title changed over the course of her employment (to "Practice Lead"), but her duties and responsibilities largely remained the same.

13.    ACS offered to its pharmaceutical clients a combination of permanent and temporary staffing services as well as more comprehensive solutions services (which encompassed staffing as a component) for clinical trials and other projects including, but not limited to, project staffing/personnel, monitoring studies, project/study management, and clinical program management.

14.    At the times relevant to this matter, Obercian worked in Aerotek's Wayne, Pennsylvania office, which provided both staffing services and solutions services to Aerotek's clients.

15.    Prior to her employment with Aerotek, Obercian had no knowledge of Aerotek's confidential information or trade secrets, *i.e.*, the identity of Aerotek's clients, its contacts for those clients, pricing for various clients, its clients' needs and the data bank of information regarding potential candidates to fill positions. At the outset of her employment, Obercian received training from Aerotek that helped her better perform her job, and included access to portions of Aerotek's confidential information. Over the course of her tenure, Obercian continued to receive training and absorbed Aerotek's confidential information to which she was regularly provided access as part of her duties.

16.     As a necessary element of carrying out her job tasks for Aerotek, Obercian had access to proprietary and confidential information, including but not limited to: Client Lists, Internal Employee Contracts, Client Service Agreements, Consultant Agreements, Road Books (print-outs of all clients and contacts within territory), Salesforce reports (sales and documentation information), Bill Rate information based on skills of consultants and clients, Burden Sheets, RWS Information (resume and information database for all candidates), Hot Books, Submittal Logs, and Phone Interview Sheets. Obercian also, as a matter of course during her tenure, participated in meetings to discuss current and target accounts – both staffing/placement and solutions clients – with fellow employees, learning about opportunities with the accounts Aerotek was and is servicing.

17.     Obercian obtained first-hand knowledge of Aerotek's proprietary and confidential staffing model and processes (described above), worked with Aerotek's staffing placement personnel to identify qualified candidates to fill positions, reviewed resumes and interviewed potential candidates for placement with Aerotek clients, and identified current Aerotek staffing clients that may be interested in clinical solutions in addition to staffing needs.  In her business development role for clinical solutions, Obercian not only learned which current Aerotek clients utilized pharmaceutical staffing services, she also learned about current and prospective clients that could utilize the clinical solutions services.

18.     During her employment with Aerotek, Obercian had a duty to and did, among other things, gain familiarity with candidates and clients; evaluate them; maintain business relationships with existing clients; develop and maintain lists of candidates, clients and contacts; and work diligently to develop business opportunities with clients and prospective clients, leveraging her contacts, deep knowledge of Aerotek's business model, as well as Aerotek's pricing and market position.

19.     Obercian's duties included creating goodwill for Aerotek through her personal contacts and business relationships.

20.     As an employee of Aerotek and through the use of its resources, Obercian had access to the following confidential information:

     a.    the identity of Aerotek's clients and potential clients;

     b.    the identity of the contact persons at Aerotek's clients who decide or have significant influence regarding which recruiting/placement firm(s) they will use;

     c.    the billing rates Aerotek charges each of its clients (which vary by client);

     d.    the placement/recruitment history of Aerotek with clients and current/future staffing requirements;

     e.    margin tolerances regarding prices including wage rates of contract employees;

     f.    sales and marketing strategies, along with sales, recruiting, pricing and marketing techniques;

     g.    the particular idiosyncrasies of each client/contact person including their preferences, likes, and dislikes regarding recruiting/placement;

     h.    the employment histories, qualifications, contact information, and preferences of candidates suitable to satisfy clients' requirements.

21.     The information referenced in paragraphs 16-17 and 20 above is not otherwise obtainable from public sources and constitutes confidential information and trade secrets.

## OBERCIAN'S EMPLOYMENT CONTRACT

22.     On January 13, 2014, Obercian signed the Agreement with Aerotek. (A copy is attached as Exhibit A.).

23.     That Agreement provides, among other things, as follows:

**3.     NON-COMPETE COVENANT:** EMPLOYEE agrees that upon the termination of EMPLOYEE's employment, whether by AEROTEK or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter EMPLOYEE shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of AEROTEK's Business for which EMPLOYEE performed service or about which EMPLOYEE obtained Confidential Information during the two (2) year period preceding termination of EMPLOYEE's employment, within a radius of fifty (50) miles from the office in which EMPLOYEE worked at the time EMPLOYEE's employment terminated or any other office in which EMPLOYEE worked during the two (2) year period preceding termination of EMPLOYEE's employment ("Restricted Area"). The prohibitions contained in this Paragraph shall extend to (i) activities undertaken by EMPLOYEE directly on EMPLOYEE's own behalf, and to (ii) activities undertaken by EMPLOYEE indirectly through any individual, corporation or entity which undertakes such prohibited activities with EMPLOYEE's assistance and in or with respect to which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity.

**4.     NON-SOLICITATION COVENANT:** EMPLOYEE agrees that upon the termination of EMPLOYEE's employment, whether by AEROTEK or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter EMPLOYEE shall not directly or indirectly:

(a)     Communicate with any individual, corporation or other entity which is a customer of AEROTEK and about which EMPLOYEE obtained Confidential Information or with which EMPLOYEE did business on AEROTEK's behalf during the two (2) year period preceding termination of EMPLOYEE's employment for the purpose of:

(i) entering into any business relationship with such customer of AEROTEK if the business relationship is competitive with any aspect of AEROTEK's Business for which EMPLOYEE performed services or about which EMPLOYEE obtained Confidential Information during the two (2) year period preceding termination of employment, or

(ii) reducing or eliminating the business such customer conducts with AEROTEK; or

(b) Communicate with any person who has been a Regular Employee within the two (2) year period preceding termination of EMPLOYEE's employment and about whom EMPLOYEE obtained knowledge or had contact by reason of EMPLOYEE's employment with AEROTEK for the purpose of:

        (i) providing services to any individual, corporation or entity whose business is competitive with AEROTEK, or

        (ii) leaving the employ of AEROTEK; or

        (c) Communicate with any person who has been a Contract Employee within the two (2) year period preceding termination of EMPLOYEE's employment and about whom EMPLOYEE obtained knowledge or had contact by reason of EMPLOYEE's employment with AEROTEK for the purpose of:

        (i) ceasing working for AEROTEK at customers of AEROTEK, or (ii) refraining from beginning work for AEROTEK at customers of AEROTEK, or (iii) providing services to any individual, corporation or entity whose business is competitive with AEROTEK.

As used in this Paragraph 4: "Regular Employee" means an employee of AEROTEK who is not a "Contract Employee"; and "Contract Employee" means an employee or candidate for employment of AEROTEK who is or was employed to perform services or solicited by EMPLOYEE to perform services at customers of AEROTEK.

The prohibitions contained in (a), (b) and (c) above shall extend to (i) activities undertaken by EMPLOYEE directly on EMPLOYEE's own behalf, and to (ii) activities undertaken by EMPLOYEE indirectly through any individual, corporation or entity which undertakes such prohibited activities with EMPLOYEE's assistance and in or with respect to which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity. . . .

    24.    Aerotek and Obercian agreed that Maryland would govern the interpretation and construction of the Agreement's terms. (Ex. A, Agreement, ¶ 10).

    25.    The Agreement also provides that "[t]he terms of Paragraphs 3 through 15 of this Agreement (including the State Specific Appendix) shall survive the termination of EMPLOYEE's employment with AEROTEK." (Ex. A, Agreement ¶ 2).

### OBERCIAN'S RESIGNATION FROM AEROTEK

    26.    Obercian abruptly resigned without notice from her employment with Aerotek on December 1, 2016.

27.     By the fact of her employment with Aerotek, and the knowledge she derived therefrom, Obercian took with her upon her resignation and without Aerotek's knowledge or authorization, its sensitive, confidential, proprietary and trade secret information.

28.     In particular, Obercian took with her knowledge regarding candidates' preferences, work and salary histories, Aerotek's clients, the contact persons of those clients, the idiosyncrasies of the clients/contact persons, the clients' recruiting/placement needs, the account managers' assessment of the clients' future needs and plans for meeting those needs, and unique business opportunities.

## OBERCIAN'S POST-RESIGNATION CONDUCT

29.     Unbeknownst to Aerotek, over the course of the later summer and autumn of 2016, Obercian applied for, interviewed for, and engaged in employment negotiations with Beacon Hill, Aerotek's direct competitor.

30.     Upon information and belief, Beacon Hill was focused on opening an office in the King of Prussia area, looking to "plant roots" in the Pennsylvania market, and needed to find someone to spearhead the office who would leverage their experience, "unique" background, and prior relationships to give Beacon Hill an "unmatched" level of service to its clients.

31.     Upon information and belief, on or about October 5, 2016, Obercian presented to Ryan Pirnat ("Pirnat"), Managing Director of Beacon Hill Pharma and Obercian's future immediate supervisor, a presentation outlining potential business strategies for the new Philadelphia-area Beacon Hill Pharma division. This presentation included a slide entitled "Play in Your Own Backyard" that identified nine (9) pharmaceutical companies in the Main Line area then-currently looking for staffing opportunities; six (6) of which were Aerotek clients on which Obercian worked during her tenure.

9

32.     On or about November 11, 2016, as part of the pre-employment negotiations, Pirnat requested that Obercian send him a copy of her Agreement with Aerotek for him to review. Obercian complied on November 18, 2016. Pirnat confirmed receipt of the Agreement the same day and promised to review it over the weekend.  From even the pre-offer stage of discussions with Obercian, Beacon Hill had notice of, and took the opportunity to review, Obercian's non-compete obligation to Aerotek.

33.     During the final stages of negotiation, Obercian informed Pirnat of her desire to bring an Aerotek staffing account manager with her to Beacon Hill.  Upon information and belief, Beacon Hill intended to springboard into the Pennsylvania market with Obercian in the lead, transitioning immediately from her position with Aerotek notwithstanding the non-compete restriction in her Agreement.

34.     In a letter dated November 28, 2016, Beacon Hill offered Obercian the position of Division Director for Beacon Hill Pharma – Beacon Hill's clinical research/life sciences specialty division, which extensively focuses on the pharmaceutical industry – in the Southeastern Pennsylvania and New Jersey marketplaces.  Obercian accepted.

35.     In the November 28, 2016 offer letter, fully recognizing the prospect of litigation with Aerotek based on the non-compete it knew she had, Beacon Hill agreed to pay defense costs for Obercian should Aerotek file suit against her for breach of the Agreement. Beacon Hill therefore was fully aware of the Agreement and that Obercian's job duties at Beacon Hill would be sufficiently similar to those she performed for Aerotek that there was a probable threat of litigation.

36.     Despite misleading former colleagues for several months after her resignation that she was still looking for new employment, in reality, Obercian began working for Beacon Hill on December 5, 2016 – merely days after her resignation from Aerotek.

37.     Beacon Hill was and is engaged in the business of recruitment and placement of employees to address clients' staffing needs.  Beacon Hill, including its Beacon Hill Pharma business, competed in the same marketplace as Aerotek.

38.     Beacon Hill hired Obercian to get a running start in launching this new branch of Beacon Hill Pharma in Pennsylvania to target primarily the Pennsylvania and New Jersey pharmaceutical markets. In an April 17, 2017 press release, Beacon Hill announced Obercian's hire and touted her years of industry experience, including her immediately previous employment where "she developed and managed a clinical research service division of an international company," – that is, Aerotek. (April 17, 2017 Press Release, attached hereto as Exhibit B.).

39.     Fully suggestive that the weight of the new branch was on her shoulders, Obercian was tasked with securing office space for the new Beacon Hill Pharma division, eventually selecting a location in King of Prussia, Pennsylvania – fewer than ten (10) miles from the Aerotek office where she had just worked.

40.     In her role as Director, Obercian managed the Beacon Hill Pharma staffing office in King of Prussia.  In this senior leadership position, Obercian's job duties included: oversight of Beacon Hill's direct- and temporary-staffing operations; driving profitability of the office; overseeing a team of account executives (i.e., the recruiters), including training and supervisory responsibilities; networking with existing Beacon Hill customers; developing contacts and relationships prospective clients services; and managing her own personal "book" of clients.  She thus was performing the same, or certain of the same, duties as she had performed for Aerotek.

41.     In the fall of 2017, despite her post-employment obligations, Obercian competed with Aerotek to fill two pharmaceutical staffing positions at an existing Aerotek client.  Obercian and Beacon Hill's candidates were selected for the two openings in the fall of 2017, beating out Aerotek and causing it to lose business and revenue. On a similarly-egregioius level, Obercian

attended a meeting with this same client to pitch Aerotek's staffing and clinical solutions services on December 1, 2016 – the day she abruptly resigned from Aerotek.

42.     Since she began employment with Beacon Hill, Obercian provided services to/conducted business with at least two of Aerotek's clients for whom she provided services while employed at Aerotek.

43.     While leading Beacon Hill's Pharma office in King of Prussia, Obercian also violated her Agreement by communicating with at least two (2) Aerotek customers with whom she did business on Aerotek's behalf during the two years prior to her separation for the purpose of entering into a competitive business relationship for Beacon Hill's benefit or reducing the business such customers conduct with Aerotek.

44.     While employed at Beacon Hill, Obercian contacted and solicited for business several Aerotek customers about which she obtained confidential information or with whom she performed services/did business with while employed at Aerotek. In doing so, Obercian violated Paragraph 4(a) of the Agreement.

45.     Obercian's employment with Beacon Hill violates and has violated Paragraph 3 of the Agreement in that she has been working or has worked within the 50-mile radius of Aerotek's Wayne office and is/was engaged in an aspect of Aerotek's Business in which she performed work during the two years prior to her termination.

46.     Upon information and belief, in her position with Beacon Hill as a Division Director, Obercian is and was responsible for the same or similar duties as in the Operations Manager/Practice Lead position she held with Aerotek in violation of the Agreement.

47.     Beacon Hill has encouraged, approved and/or ratified Obercian's unlawful and improper actions and has done so without privilege to do so.  Beacon Hill purposefully did so with the intent to cause Obercian to violate her contractual obligations to Aerotek.

48.     No stranger to hiring employees, like Obercian, in flat contravention of restrictive covenants, Beacon Hill has done so in numerous situations, evidencing its flagrant and willful disregard of contract rights, including Aerotek's rights in Obercian's Agreement.  Remarkably, Beacon Hill has been the subject of prior litigation by Aerotek (or its affiliated companies), as well as a defendant in, upon information and belief, no less than twenty (20) lawsuits alleging tortious interference with other parties' contractual rights.   A listing of these cases that evinces a pattern and practice of thumbing its nose at contracts is attached as Exhibit C.

49.     Upon information and belief, Beacon Hill's business model, inherently grounded on unfair competition, is to hire employees from competitors for the purpose of exploiting the contacts they developed at the competitor to obtain new clients without incurring any of the costs and time investment, and disregarding competitors' contractual rights in protecting legitimate business interests.

50.     Upon information and belief, Pirnat, in the execution of his job duties at Beacon Hill, has personally engaged in hiring employees away from Beacon Hill competitors with knowledge of these persons' contractual agreements to their former employers.

51.     Beacon Hill's encouragement to Obercian to violate the terms of her Employment Agreement has caused and will continue to cause Aerotek irreparable damage in excess of $150,000, exclusive of interest and costs.

## COUNT I - TORTIOUS INTERFERENCE WITH CONTRACT

52.     Aerotek incorporates and re-alleges the allegations in paragraphs 1 through 51 as if fully set forth herein.

13

53.     Aerotek had and has a valid and enforceable agreement with Obercian by virtue of the Agreement with her.

54.     Aerotek had a reasonable expectation that this contractual relationship would continue in accordance with the terms of the Agreement, including the non-compete restriction, and that Obercian would comply with her obligations.

55.     Beacon Hill had knowledge of the Agreement, and the non-compete restriction in particular, at the time that it offered Obercian employment and certainly when it hired her to lead its Beacon Hill Pharma office.

56.     Beacon Hill had knowledge of Obercian's job duties during her employment at Aerotek, and knew that her job duties at Beacon Hill were the same or substantially similar to those that she performed for Aerotek.  Beacon Hill therefore knew that hiring Obercian would result in her directly competing against Aerotek in direct violation of the Agreement.

57.     Upon information and belief, Beacon Hill has also directed and encouraged, or ratified and benefitted from, Obercian's violation of the non-solicitation provision of the Agreement.

58.     Despite its knowledge of the terms of Obercian's post-employment restrictions under the Agreement, Beacon Hill has intentionally and improperly interfered with Obercian's performance of the Agreement by employing her, continuing to employ her, and endorsing and/or ratifying her breach of the Agreement.

59.     Beacon Hill's actions in causing Obercian not to perform the obligations under the Agreement were and are not justified or privileged.

60.     As a direct and proximate result of Beacon Hill's improper interference, without justification or privilege, Aerotek has suffered damage, including the loss of business and revenue as well as the attorneys' fees it has incurred, and is incurring, in the Maryland Litigation.

14

61.     Beacon Hill, acting willfully and with the intent to harm Aerotek in reckless indifference to its rights, has interfered with Aerotek's contractual rights, and, as such, Aerotek is entitled to punitive damages, especially given Beacon Hill's long-standing and inveterate pattern of engaging in unfair competition by interfering with parties' contractual rights.

## PRAYER FOR RELIEF AND DAMAGES

WHEREFORE, Aerotek demands the following:

a.      Actual and punitive damages to be proven at trial in an amount in excess of $150,000; and

b.      such other and further relief as this Court may deem proper.

Respectfully submitted,

Matthew J. Hank (PA # 86086)
Jonathan L. Shaw (PA # 316882)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
Phone: 267.402.3012
Facsimile: 267.402.3131
mhank@littler.com
jlshaw@littler.com

*Counsel for Plaintiff Aerotek, Inc.*

Date: <u>June 22, 2018</u>

# EXHIBIT A

# EMPLOYMENT AGREEMENT

This EMPLOYMENT AGREEMENT (this "Agreement"), made this 13th day of January, 2014, by and between AEROTEK, Inc., hereinafter referred to as "AEROTEK", and Christine Obercian, hereinafter referred to as "EMPLOYEE."

WHEREAS, AEROTEK is engaged in the highly competitive businesses of recruiting, employing, and providing the services of scientific, life sciences, engineering, technical, industrial, environmental, energy, professional, financial, commercial, call center, and/or other personnel on a temporary or permanent basis to companies and other entities throughout the United States (hereinafter collectively "AEROTEK's Business").

WHEREAS, the parties hereto recognize and acknowledge that AEROTEK will provide EMPLOYEE portions of the Confidential Information (as defined in Paragraph 6 hereof) of AEROTEK for use in the performance of these services and of this Agreement. EMPLOYEE further acknowledges that the Confidential Information is a valuable property right of AEROTEK, and that the same is information and knowledge not generally known in the public domain and that the maintenance of secrecy concerning the Confidential Information is essential to the business affairs, value, effectiveness, good will and continuing viable business status of AEROTEK.

WHEREAS, the parties hereto recognize, and do hereby acknowledge, that the disclosure, misappropriation or collection for future use, whether directly or indirectly, of the Confidential Information to other third party persons or organizations will irreparably

1

and substantially cause considerable financial and other loss, detriment and damage to AEROTEK.

WHEREAS, EMPLOYEE will become intimately involved with AEROTEK's Business and with the Confidential Information, and will become personally acquainted with the business connections, customers, clients and trade of AEROTEK.

WHEREAS, AEROTEK wishes to be able to impart portions of the Confidential Information to EMPLOYEE with the secure knowledge that such Confidential Information will be solely and strictly used for AEROTEK's sole benefit and not in competition with or to the detriment of AEROTEK, directly or indirectly, by EMPLOYEE or any of his/her agents, servants, future employees or consultants or future employers.

NOW THEREFORE, in consideration of the foregoing and of the mutual covenants and restrictions contained herein, and other valuable consideration, the receipt of which is hereby acknowledged, each of the parties, their respective personal representatives, heirs, successors and assigns, intending to be legally bound hereby agree as follows:

1.  **AGREEMENT OF EMPLOYMENT:** AEROTEK hereby employs or agrees to continue to employ the above named EMPLOYEE for the position of Recruiter (including but not limited to Recruiter Trainee, Recruiter II, Senior Recruiter, Professional Recruiter, and Account Recruiting Manager) or Account Manager, (including, but not limited to Contracts Manager, Account Executive, and Sales Manager) with a base annual salary of $120,000.00 (which includes, where applicable, a location adjustment) to be paid in weekly installments or on such other periodic basis as shall be

determined by AEROTEK, plus incentive pay as may be determined by AEROTEK in its sole and absolute discretion from time to time.

EMPLOYEE agrees to be so employed and may be promoted and compensated accordingly at AEROTEK's sole and absolute discretion.  In addition, EMPLOYEE agrees that the salary may change if EMPLOYEE is relocated (where a higher, lower, or no location adjustment is paid).  The scope of EMPLOYEE's employment, including duties, assignments, positions and all responsibilities, shall be as established by AEROTEK from time to time.  The parties agree that EMPLOYEE shall devote his/her full time, attention and energies to the business of AEROTEK and during the term of this Agreement shall not enter into or engage in any conflicting business activity.

In turn, AEROTEK will provide EMPLOYEE with: (a) Confidential Information belonging to AEROTEK and updates thereto; (b) authorization to communicate with customers and prospective customers; (c) authorization to communicate with Contract Employees (as defined in Paragraph 4); and/or (d) authorization to participate in specialized training related to AEROTEK's Business.

As used in this Agreement, "Affiliates" means AEROTEK's successors in interest, affiliates (as defined in Rule 12b-2 under Section 12 of the Securities Exchange Act), subsidiaries, parents, purchasers, or assignees.

2.     **TERM OF EMPLOYMENT:**  The term of employment shall continue until terminated by either party.  EMPLOYEE agrees and expressly understands that the term of employment under this Agreement is "at will," with no certain term of employment being offered or promised and that no guaranteed or definite term of employment is being given or implied by this Agreement.  Although EMPLOYEE's

3

employment is "at will," EMPLOYEE agrees to provide AEROTEK two (2) weeks advance notice of EMPLOYEE's decision to terminate employment. It is further expressly understood and agreed by EMPLOYEE that AEROTEK may terminate EMPLOYEE's employment with AEROTEK at any time either with or without cause, in AEROTEK's sole and absolute discretion. In the event that AEROTEK terminates EMPLOYEE's employment for cause as determined solely by AEROTEK, then EMPLOYEE shall not be entitled to any advance notice of said termination. Should EMPLOYEE's employment be terminated by AEROTEK without cause, then EMPLOYEE shall be afforded a minimum of twenty-four (24) hours notice of said termination. Such notice shall be given to EMPLOYEE either orally or in writing and if in writing shall be effective as of the date delivered, or sent, if by mail, to EMPLOYEE's last known address carried on AEROTEK's files. EMPLOYEE agrees to keep AEROTEK informed as to EMPLOYEE's current living and mailing address at all times while employed by AEROTEK.

The terms of Paragraphs 3 through 15 (including the State Specific Appendix) of this Agreement shall survive the termination, for whatever reason, of EMPLOYEE's employment with AEROTEK.

3.    **NON-COMPETE COVENANT:** EMPLOYEE agrees that upon the termination of EMPLOYEE's employment, whether by AEROTEK or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter EMPLOYEE shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of AEROTEK's Business for which EMPLOYEE performed services or about which

4

EMPLOYEE obtained Confidential Information during the two (2) year period preceding termination of EMPLOYEE's employment, within a radius of fifty (50) miles from the office in which EMPLOYEE worked at the time EMPLOYEE's employment terminated or any other office in which EMPLOYEE worked during the two (2) year period preceding termination of EMPLOYEE's employment ("Restricted Area").

The prohibitions contained in this Paragraph shall extend to (i) activities undertaken by EMPLOYEE directly on EMPLOYEE's own behalf, and to (ii) activities undertaken by EMPLOYEE indirectly through any individual, corporation or entity which undertakes such prohibited activities with EMPLOYEE's assistance and in or with respect to which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity.

4.      **NON-SOLICITATION COVENANT:**  EMPLOYEE agrees that upon the termination of EMPLOYEE's employment, whether by AEROTEK or EMPLOYEE and whether with or without cause, for a period of eighteen (18) months thereafter EMPLOYEE shall not directly or indirectly:

(a)      Communicate with any individual, corporation or other entity which is a customer of AEROTEK and about which EMPLOYEE obtained Confidential Information or with which EMPLOYEE did business on AEROTEK's behalf during the two (2) year period preceding termination of EMPLOYEE's employment for the purpose of:

(i)      entering into any business relationship with such customer if the business relationship is competitive with any aspect of AEROTEK's Business for which EMPLOYEE performed services

or about which EMPLOYEE obtained Confidential Information during the two (2) year period preceding termination of EMPLOYEE's employment, or

(ii)    reducing or eliminating the business such customer conducts with AEROTEK; or

(b)    Communicate with any person who has been a Regular Employee within the two (2) year period preceding termination of EMPLOYEE's employment and about whom EMPLOYEE obtained knowledge or had contact by reason of EMPLOYEE's employment with AEROTEK for the purpose of:

(i)    providing services to any individual, corporation or entity whose business is competitive with AEROTEK, or

(ii)    leaving the employ of AEROTEK; or

(c)    Communicate with any person who has been a Contract Employee within the two (2) year period preceding termination of EMPLOYEE's employment and about whom EMPLOYEE obtained knowledge or had contact by reason of EMPLOYEE's employment with AEROTEK for the purpose of:

(i)    ceasing work for AEROTEK at customers of AEROTEK , or

(ii)    refraining from beginning work for AEROTEK at customers of AEROTEK, or

(iii)    providing services to any individual, corporation or entity whose business is competitive with AEROTEK.

As used in this Paragraph 4:  "Regular Employee" means an employee of AEROTEK who is not a "Contract Employee"; and "Contract Employee" means an

employee or candidate for employment of AEROTEK who is or was employed to perform services or solicited by EMPLOYEE to perform services at customers of AEROTEK.

The prohibitions contained in (a), (b) and (c) above shall extend to (i) activities undertaken by EMPLOYEE directly on EMPLOYEE's own behalf, and to (ii) activities undertaken by EMPLOYEE indirectly through any individual, corporation or entity which undertakes such prohibited activities with EMPLOYEE's assistance and in or with respect to which EMPLOYEE is an owner, officer, director, trustee, shareholder, creditor, employee, agent, partner or consultant or participates in some other capacity.

Where required by applicable law, the restrictions in Paragraph 4 shall be limited to the Restricted Area.

5. **INDEMNIFICATION AND HOLD HARMLESS:** EMPLOYEE represents and warrants that EMPLOYEE's employment with AEROTEK will not violate the terms and conditions of any agreements entered into by EMPLOYEE prior to or during EMPLOYEE's employment with AEROTEK. EMPLOYEE covenants and agrees to indemnify and hold AEROTEK harmless from any and all suits and claims arising out of any breach of any terms and conditions contained in any such agreements entered into by EMPLOYEE.

6. **COVENANT NOT TO DIVULGE CONFIDENTIAL INFORMATION:** EMPLOYEE covenants and agrees that, except as required by the proper performance of EMPLOYEE's duties for AEROTEK, EMPLOYEE shall not use, disclose or divulge any Confidential Information of AEROTEK to any other person, entity or company besides AEROTEK. For purposes of this Agreement, "Confidential

Information" shall mean information not generally known by the competitors of AEROTEK or the general public concerning AEROTEK's Business that AEROTEK takes reasonable measures to keep secret, including but not limited to: financial information and financial controls; sales and marketing strategies; acquisition plans; pricing and costs; customers' names, addresses, telephone numbers, and contact persons; customers' staffing requirements; margin tolerances regarding pricing; the names, addresses, telephones numbers, skill sets, availability and wage rates of Contract Employees; sales, recruiting, pricing and marketing techniques; sales and recruiting manuals; forms and processes for acquiring and recording information; salary and performance evaluations of Regular Employees; and management practices, procedures and processes. These restrictions on use or disclosure of Confidential Information will only apply for three (3) years after the end of EMPLOYEE's employment where information that does not qualify as a trade secret is concerned. The restrictions will apply to trade secret information for as long as the information remains qualified as a trade secret.

7.      **RETURN AND PRESERVATION OF RECORDS:**   EMPLOYEE agrees, upon termination of EMPLOYEE's employment with AEROTEK for any reason whatsoever, to return to AEROTEK all records and other property (whether on paper, computer discs or in some other form), copies of records, and papers belonging or pertaining to AEROTEK (collectively "Company Records"). EMPLOYEE further agrees not to engage in any unauthorized destruction or deletion of Company Records during employment or upon termination of employment, including, without limitation, the deletion of electronic files, data, records or e-mails.

8.     **REMEDIES; DAMAGES:**  (a) EMPLOYEE recognizes that irreparable damage will result to AEROTEK in the event of the violation of any covenant contained in Paragraphs 3, 4, 6 and 7 hereof made by EMPLOYEE, and agrees that in the event of such violation, AEROTEK, in addition to and without limiting any other remedy or right that it may have, shall be entitled to an injunction or other equitable relief in any court of competent jurisdiction, enjoining any such violations by EMPLOYEE.  In furtherance of the foregoing, EMPLOYEE hereby waives any and all defenses EMPLOYEE may have on the ground of the lack of jurisdiction or competence of the court to grant such an injunction or other equitable relief.   The existence of the foregoing right shall not preclude any other rights and remedies at law or in equity that AEROTEK may have.

(b)     EMPLOYEE further recognizes and acknowledges that it would be difficult to ascertain the damages arising from a violation by EMPLOYEE of the covenants contained in Paragraphs 3, 4 , 6 and 7 hereof.  EMPLOYEE agrees that as damages arising as a consequence of a violation of the covenants contained in Paragraphs 3, 4 , 6 and 7 EMPLOYEE shall pay to AEROTEK an amount equal to one hundred percent (100%) of the gross profit, or twenty-five percent (25%) of the gross sales, whatever amount is greater, resulting from business generated by EMPLOYEE, either directly or indirectly, on EMPLOYEE's own account or as agent, owner, officer, director, trustee, creator, partner, consultant, stockholder, employer, employee, or otherwise for or in conjunction with any other person or entity, through soliciting or otherwise competing for accounts or personnel in violation of Paragraphs 3, 4, 6 or 7 hereof.

9

9.    **WAIVER OF BREACH:** The waiver by AEROTEK of a breach of any provision of this Agreement by the EMPLOYEE shall not operate or be construed as a waiver of any subsequent breach by the EMPLOYEE.

10.    **SITUS OF AGREEMENT; JURISDICTION:** This Agreement is being entered into in the State of Maryland and thus shall be governed by and construed, interpreted and enforced in accordance with the laws of the State of Maryland, without giving effect to the principles of conflicts of laws thereof.  Each of the parties hereto hereby irrevocably consents and submits to the jurisdiction of the Circuit Court for Anne Arundel County, Maryland, or any Federal court sitting in the State of Maryland, for the purposes of any controversy, claim, dispute or action arising out of or related to this Agreement, and hereby waives any defense of any inconvenient forum and any right of jurisdiction on account of EMPLOYEE's place of residence or domicile.

11.    **SEVERABILITY:** If any term, provision, covenant or condition of this Agreement, or the application thereof to any circumstance or party hereto, shall, to any extent, be invalid or unenforceable in any jurisdiction, the remainder of this Agreement, or application of such term, provision, covenant or condition to such circumstance or party, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each remaining term, provision, covenant or condition of this Agreement shall be valid and enforceable to the fullest extent permitted by applicable law.  Any such invalidation or unenforceability in any jurisdiction shall not render unenforceable such provision in any other jurisdiction.  Without limiting the generality of the foregoing, if a court of competent jurisdiction should determine that any of the restrictions contained in Paragraphs 3, 4 or 6 hereof are unreasonable in terms of scope,

duration, geographic area or otherwise, such provision shall be deemed reformed to the minimum extent necessary such that such restriction shall be rendered enforceable.

12. **WAIVER OF RIGHT TO JURY TRIAL: BY EXECUTING THIS AGREEMENT, THE PARTIES HERETO KNOWINGLY AND WILLINGLY WAIVE ANY RIGHT THEY HAVE UNDER APPLICABLE LAW TO A TRIAL BY JURY IN ANY DISPUTE ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT, EMPLOYEE'S EMPLOYMENT WITH AEROTEK, OR THE ISSUES RAISED BY ANY SUCH DISPUTE.**

13. **EARLY RESOLUTION CONFERENCE.** EMPLOYEE will give AEROTEK written notice at least fourteen (14) days prior to (a) violating any provision of Paragraphs 3, 4, 6 or 7; and/or (b) challenging the enforceability of Paragraphs 3, 4, 6 and/or 7 (including subparts), and will participate in a mediation or in-person conference if requested to do so by AEROTEK within thirty (30) days of such a request in order to help avoid unnecessary legal disputes. Should EMPLOYEE fail to comply with this Paragraph's notice or mediation/in-person conference requirement, EMPLOYEE acknowledges and agrees that such failure will serve as a waiver of EMPLOYEE's right to challenge the enforceability of Paragraphs 3, 4, 6, and 7.

14. **ATTORNEYS' FEES:** Should AEROTEK sue to enforce this Agreement or to seek damages or injunctive relief for EMPLOYEE'S breach of this Agreement, and AEROTEK is the prevailing party in such suit, AEROTEK shall be entitled to recover its attorneys' fees and costs incurred in connection with such suit.

15. **ENTIRE AGREEMENT:** This Agreement represents the entire agreement between the parties with respect to the subject matter covered by this

Agreement.  This Agreement supersedes any and all prior agreements or understandings, oral or written, between the parties hereto pertaining to the subject matter covered by this Agreement, and may not be changed orally.  EMPLOYEE agrees that AEROTEK may assign this Agreement to any Affiliate, or to any transferee of all or substantially all of the assets of AEROTEK, and hereby consents to any such assignment, which shall not, in and of itself, constitute a termination of the EMPLOYEE's employment hereunder. EMPLOYEE agrees that this Agreement may be enforced by AEROTEK's assignees without need of any further authorization or agreement from EMPLOYEE.  The parties hereto understand that this Agreement shall remain in effect notwithstanding any job change or job assignment by EMPLOYEE within or between AEROTEK or its Affiliates. EMPLOYEE acknowledges that the covenants and conditions of this Agreement are reasonable and fair.  EMPLOYEE further recognizes that the restrictions and conditions contained herein are necessary for the protection of AEROTEK's Business.

As WITNESS the hands and seals of the parties hereto the year and day first above written.


WITNESS:                                         AEROTEK, INC.

_Ana Ruta_                                       BY: _____
(SEAL)


WITNESS:                                         EMPLOYEE:


_Laura Rynely_                                   _L. Obusian_
(SEAL)

## APPENDIX OF STATE-SPECIFIC MODIFICATIONS

### Arizona:

The geographic areas below 50 miles referred to above are provided solely to allow for revisions of the Agreement in grammatically severable lesser areas if a court or arbitrator finds 50 miles too broad, with the understanding that there will be a presumption in favor of a 50-mile area. The parties agree the 50-mile radius is the geographic area in which and about which the Employee is expected to provide services and receive Confidential Information.

### California:

While EMPLOYEE is a resident of California and subject to its laws: (a) the restrictions in Paragraph 4(a) will be limited so that they only apply where EMPLOYEE is aided by the use or disclosure of Confidential Information; (b) the restrictions in Paragraph 3 will not apply; and (c) the jury trial waiver contained in Paragraph 12 will not apply.

### Georgia:

While EMPLOYEE is a resident of Georgia and if the choice of law provision in Paragraph 10 does not control:  (a) the non-compete provision in Paragraph 3 will be limited to  the geographic area (state, territory, parish, county, country, province, or jurisdiction) where EMPLOYEE assists AEROTEK in marketing its products and/or services, which the parties agree includes:          ; (b) the provisions of Paragraph 4(a) will be limited to customers or clients of AEROTEK with whom EMPLOYEE does business ; and (c) the jury trial waiver contained in Paragraph 12 will not apply.

### Louisiana:

While EMPLOYEE is a resident of Louisiana and if the choice of law provision in Paragraph 10 does not control, the enforcement of the restrictions in Paragraphs 3 and 4(a) will be limited within the state of Louisiana to the following Parishes where EMPLOYEE has helped or will help AEROTEK do business, or the portions of these Parishes that are covered by the Restricted Area definition, whichever is fewer; provided, however, that nothing in Agreement may be construed to prohibit the enforcement of Paragraphs 3 and 4(a) in accordance with their terms in states outside of Louisiana (circle all  that apply):

| | | | |
|---|---|---|---|
| Acadia | Allen | Ascension | Assumption |
| Avoyelles | Beauregard | Bienville | Bossier |
| Caddo | Calcasieu | Caldwell | Cameron |
| Catahoula | Claiborne | Concordia | De Soto |
| East Baton Rouge | East Carroll | East Feliciana | Evangeline |
| Franklin | Grant | Iberia | Iberville |
| Jackson | Jefferson | Jefferson Davis | Lafayette |
| Lafourche | La Salle | Lincoln | Livingston |
| Madison | Morehouse | Natchitoches | Orleans |
| Ouachita | Plaquemines | Pointe Coupee | Rapides |
| Red River | Richland | Sabine | St. Bernard |
| St. Charles | St. Helena | St. James | St. John the Baptist |
| St. Landry | St. Martin | St. Mary | St. Tammany |
| Tangipahoa | Tensas | Terrebonne | Union |
| Vermilion | Vernon | Washington | Webster |
| West Baton Rouge | West Carroll | West Feliciana | Winn |

**Nebraska:**

While EMPLOYEE is a resident of Nebraska and if the choice of law provision in Paragraph 10 does not control, the enforcement of the restrictions in Paragraph 4(a) will be limited to customers and clients with whom EMPLOYEE did business and had personal contact.

**North Carolina:**

While EMPLOYEE is a resident of North Carolina and if the choice of law provision in Paragraph 10 does not control, Paragraph 1 is modified to add: The parties intend that the Protective Covenants in Paragraphs 3 and 4 are ancillary to AEROTEK's promises and obligations under this Paragraph 1. The parties further intend that AEROTEK's promises constitute a positive contract and that a court construe AEROTEK's promises and EMPLOYEE's obligations as creating bi-lateral obligations. Further, the jury trial waiver contained in Paragraph 12 will not apply.

# EXHIBIT B

 BEACON HILL

PRINT 

#  Beacon Hill Staffing Group Arrives in King of Prussia, Launches Pharma Division

17 April 2017

Beacon Hill Staffing Group recently opened its 52nd location, laying down roots in King of Prussia, PA. The new office opens with Beacon Hill Pharma, Beacon Hill's clinical research/life sciences specialty division.

Leading Beacon Hill Pharma in King of Prussia is **Christine Obercian.** Ms. Obercian brings nearly 20 years of experience within the life sciences industry, including hands-on clinical research and project management, working with and for various sponsors and CROs on international drug and device trials across various therapeutic areas and phases. Prior to joining Beacon Hill Pharma, she developed and managed a clinical research service division of an international company. Ms. Obercian earned her Bachelor of Arts degree in Psychology from Washington & Lee University, a Master of Science degree in educational psychology from the University of Kentucky, and a PhD (a.b.d.) in psychology from California Coast University, and is a PMI certified Project Management Professional.

"Some of the toughest times in my clinical research career stemmed from working with top-notch people who were simply not placed in jobs where they could succeed," remarked **Ms. Obercian.** "I can leverage that experience to help companies and professionals find the best match specific to their needs. I chose Beacon Hill Pharma because of how they differ from other staffing companies. Beacon Hill Pharma hires top talent with proven success in the staffing and research industries, and capitalizes on that expertise to deliver a consistently outstanding, customer-centric experience for both our candidates and our clients. I am proud to be with a company and a

leadership team that sees past the short-term implications of a mercurial landscape in what is often cited as transaction in nature to honor what really counts in any business: long-term consultative partnerships borne of trust, ethics, and mutual respect."

Joining Christine as an Account Executive is **John Kofka.** Mr. Kofka brings six years of experience in the staffing and medical device fields to the team. Located in New Jersey, Mr. Kofka will focus on the New Jersey-Pennsylvania-New York tri-state area markets. He earned his Bachelor's degree in business administration from Monmouth University in New Jersey.

"We are very excited to formally plant roots in the Pennsylvania and New Jersey marketplaces," remarked **Ryan Pirnat, Managing Director of Beacon Hill's Pharma Division.** "Christine comes to Beacon Hill with unique experience, as she worked directly in clinical research at pharmaceutical companies and CROs. This will allow her to provide a level of service to Beacon Hill clients unmatched in the industry."

Beacon Hill Staffing Group's niche brands provide direct hire, executive search, temporary staffing, contract consulting, temp/contract-to-hire, and MSP/VMS and RPO solutions to emerging growth companies and the Fortune 500 across multiple market sectors and all industries. Over time, office locations, specialty practice areas and service offerings will be added to address ever changing constituent needs.


Return →

# EXHIBIT C

List of 22 results for advanced: DEF("beacon hill staffing group")

## 1. Aerotek, Inc. v. Murphy et al

September 25, 2017    MO U.S. Dist. Ct., East    4:17-CV-02469    Contracts, Other Contract    Judge(s): District
Judge Henry Edward Autrey    None

| | | |
|---|---|---|
| Plaintiff(s): | Aerotek, Inc. | |
| Defendant(s): | Joel T. Murphy | Beacon Hill Staffing Group LLC. |
| Plaintiff Attorney(s): | Harry W. Wellford, Jr. | Jennifer C. Znosko | Andrew Cahill Johnson |
| Defendant Attorney(s): | Gino F. Battisti | Michael R. Dauphin | |

## 2. CONVERGENZ LLC v. BEACON HILL STAFFING GROUP LLC

November 05, 2014    DC U.S. Dist. Ct.    1:14-CV-01864    Contracts, Other Contract    Judge(s): Judge Amy
Berman Jackson    Both

| | | |
|---|---|---|
| Plaintiff(s): | CONVERGENZ LLC | |
| Defendant(s): | BEACON HILL STAFFING GROUP LLC | |
| Plaintiff Attorney(s): | Alan Lescht | Susan Laiken Kruger |
| Defendant Attorney(s): | Edward J. Longosz, II | Mark Andrew Johnston | Sarah Jean Shyr |

## 3. Diversant, LLC v. Katakozinos et al

April 17, 2015    NC U.S. Dist. Ct., West    3:15-CV-00172    Contracts, Other Contract    Judge(s): District
Judge Robert J. Conrad, Jr    Plaintiff

| | | |
|---|---|---|
| Plaintiff(s): | Diversant, LLC | |
| Defendant(s): | Corielle Katakozinos | Beacon Hill Staffing Group, LLC |
| Plaintiff Attorney(s): | Sarah Fulton Hutchins | Alice Carmichael Richey |

## 4. Insight Global LLC v. Weitlauf et al

November 13, 2017    IL U.S. Dist. Ct., North    1:17-CV-08194    Other Federal Statutes, Other Federal Statutory
Actions    Judge(s): Honorable Rebecca R. Pallmeyer    Defendant

| | | |
|---|---|---|
| Plaintiff(s): | Insight Global LLC | |
| Defendant(s): | Wesley Weitlauf | Beacon Hill Staffing Group, LLC |
| Plaintiff Attorney(s): | Matthew J Simmons | John Michael Riccione |
| Defendant Attorney(s): | Hal J. Wood | Richard Zachary Wolf |

List of 22 results for advanced: DEF("beacon hill staffing group")

### 5. Insight Global, LLC v. Beacon Hill Staffing Group, LLC
January 20, 2017     CA U.S. Dist. Ct., North     3:17-CV-00309     Contracts, Other Contract     Plaintiff

Plaintiff(s):  Insight Global, LLC

Defendant(s):  Beacon Hill Staffing Group, LLC

Plaintiff          Jeremy Matthew Mittman
Attorney(s):

### 6. Insight Global, LLC v. Beacon Hill Staffing Group, LLC
January 20, 2017     CA U.S. Dist. Ct., North     4:17-CV-00309     Contracts, Other Contract     Judge(s): Hon.
Yvonne Gonzalez Rogers          Both

Plaintiff(s):  Insight Global, LLC

Defendant(s):  Beacon Hill Staffing Group, LLC

| Plaintiff Attorney(s): | Anthony J. Oncidi | Christopher Carl Marquardt | Isabella Pei-Ying Lee |
|---|---|---|---|
| | Pietro A Deserio | Jeremy Matthew Mittman | |
| Defendant Attorney(s): | Olga Savage | Tyler Mark Paetkau | Charles John Smith, III |

### 7. Insight Global, LLC v. Beacon Hill Staffing Group, LLC
January 20, 2017     CA U.S. Dist. Ct., North     5:17-CV-00309     Contracts, Other Contract     Judge(s): Judge
Beth Labson Freeman          Both

Plaintiff(s):  Insight Global, LLC

Defendant(s):  Beacon Hill Staffing Group, LLC

| Plaintiff Attorney(s): | Anthony J. Oncidi | Christopher Carl Marquardt | Anna Beth Saraie |
|---|---|---|---|
| | Isabella Pei-Ying Lee | Pietro A Deserio | Jeremy Matthew Mittman |
| Defendant Attorney(s): | Benjamin I. Fink | Olga Savage | Tyler Mark Paetkau |
| | Charles John Smith, III | | |

### 8. Insight Global, LLC v. Lilley et al
August 08, 2017     TX U.S. Dist. Ct., South     4:17-CV-02440     Contracts, Other Contract     Judge(s): Judge
Sim Lake     None

Plaintiff(s):  Insight Global, LLC

Defendant(s):  James Cody Lilley          Beacon Hill Staffing Group, LLC

Plaintiff          Matthew J. Simmons          William Scott Helfand
Attorney(s):

Defendant          Roy Tate Young          Matthew Scott Veech
Attorney(s):

List of 22 results for advanced: DEF("beacon hill staffing group")

---

### 9. Insight Global, LLC v. McDonald et al

August 08, 2017     CO U.S. Dist. Ct.     1:17-CV-01915     Contracts, Other Contract     Judge(s): Chief Judge
Marcia S. Krieger     Both

| Plaintiff(s): | Insight Global, LLC | | |
|---|---|---|---|
| Defendant(s): | Mary McDonald | Beacon Hill Staffing Group, LLC | |
| Plaintiff Attorney(s): | Joseph Patrick Sanchez | Ariel Denbo Zion | Derek Charles Blass |
| | Matthew Jeffery Simmons | | |
| Defendant Attorney(s): | Glen Frank Gordon | Jonathan B. Boonin | Lance John Ream |
| | Laurie J. Rust | Maral Shoaei | |

### 10. Insight Global, LLC v. Tessar et al

March 01, 2018     OR U.S. Dist. Ct.     3:18-CV-00368     Other Federal Statutes, Other Federal Statutory Actions
None

| Plaintiff(s): | Insight Global, LLC | | |
|---|---|---|---|
| Defendant(s): | Brando Tessar | Brandon Sherrill | Mackenzie Flanagan |
| | Beacon Hill Staffing Group, LLC | | |
| Plaintiff Attorney(s): | Insight Global, LLC | | |

☞

### 11. Insight Global, LLC v. Wenzel et al

October 27, 2017     NY U.S. Dist. Ct., South     1:17-CV-08323     Contracts, Other Contract     Judge(s): Judge
Paul G. Gardephe     Plaintiff

| Plaintiff(s): | Insight Global, LLC | | |
|---|---|---|---|
| Defendant(s): | Daniel Wenzel | Luke Norman | Lauren Sutmar |
| | Beacon Hill Staffing Group, LLC | | |
| Plaintiff Attorney(s): | Ariel Denbo Zion | Edward Elliott Filusch | Matthew Jeffrey Simmons |
| | Rimma Ayzen | Jessica Taub Rosenberg | |
| Defendant Attorney(s): | Charlotte Bednar | Geraldine Ann Cheverko | Anthony Moccia |

### 12. Internal Data Resources, Inc. v. Beacon Hill Staffing Group, LLC et al

June 13, 2014     GA U.S. Dist. Ct.,North     1:14-CV-01860     Contracts, Other Contract     Judge(s): Judge
Richard W. Story     Plaintiff

| Plaintiff(s): | Internal Data Resources, Inc. | | |
|---|---|---|---|
| Defendant(s): | Beacon Hill Staffing Group, LLC | Makenzie Briggs | |
| Plaintiff Attorney(s): | Robert Edward Johnson, Jr. | | |
| Defendant Attorney(s): | Beacon Hill Staffing Group, LLC | Gabriel T. Dym | John R. Hunt |

---

List of 22 results for advanced: DEF("beacon hill staffing group")

### 13. Kforce Inc. v. Beacon Hill Staffing Group LLC, et al
November 06, 2014     MO U.S. Dist. Ct., East     4:14-CV-01880     Contracts, Other Contract     Judge(s): District Judge Catherine D. Perry     Defendant

Plaintiff(s):   Kforce Inc.

Defendant(s):  Beacon Hill Staffing Group LLC.     Gary Hahn

Plaintiff Attorney(s):   Erin E. Williams     Meredith A. Lopez

Defendant Attorney(s):   Anthony M. Moccia     Gino F. Battisti     Michael R. Dauphin

### 14. Modis, Inc. v. Viet
April 13, 2015     IA U.S. Dist. Ct., South     4:15-CV-00110     Contracts, Other Contract     Judge(s): Judge Stephanie M. Rose     Plaintiff

Plaintiff(s):   Modis, Inc.

Defendant(s):  Adam Viet     Beacon Hill Staffing Group, LLC

Plaintiff Attorney(s):   Vincent John Ella     Catherine A. Cano     Kenneth M. Wentz, III

Defendant Attorney(s):   Stanley J Thompson     Elizabeth R. Meyer

### 16. Randstad General Partner (US) LLC v. Beacon Hill Staffing Group, LLC et al
March 10, 2017     MD U.S. Dist. Ct.     1:17-CV-00680     Contracts, Other Contract     Judge(s): Judge Ellen L. Hollander     Plaintiff

Plaintiff(s):   Randstad General Partner (US) LLC

Defendant(s):  Beacon Hill Staffing Group, LLC     John Williams

Plaintiff Attorney(s):   Edward Victor Arnold     Dawn Mertineit     Erik W Weibust

Defendant Attorney(s):   Edward J Longosz, II     Mark A Johnston

### 17. Randstad General Partner (US) LLC v. Smith et al
September 15, 2014     IL U.S. Dist. Ct., North     1:14-CV-07167     Contracts, Other Contract     Judge(s): Honorable Thomas M. Durkin     None

Plaintiff(s):   Randstad General Partner (US) LLC

Defendant(s):  Steven Smith     Beacon Hill Staffing Group, LLC

Plaintiff Attorney(s):   James M. Witz     Todd M. Church

Defendant Attorney(s):   Hal J. Wood     Richard Zachary Wolf

### 18. Randstad General Partner (US), LLC v. Keliher et al
March 10, 2017     MA U.S. Dist. Ct.     1:17-CV-10404     Contracts, Other Contract     Judge(s): Judge Allison D. Burroughs     Plaintiff

List of 22 results for advanced: DEF("beacon hill staffing group")

| Plaintiff(s): | Randstad General Partner (US), LLC | | |
| Defendant(s): | Kathleen Keliher | Beacon Hill Staffing Group, LLC | |
| Plaintiff Attorney(s): | Dawn M. Mertineit | Erik W. Weibust | |

## 19. RCM TECHNOLOGIES, INC. v. BEACON HILL STAFFING GROUP, LLC et al
April 12, 2007   DC U.S. Dist. Ct.   1:07-CV-00670   Contracts, Other Contract   Judge(s): Judge John D. Bates   Plaintiff

| Plaintiff(s): | RCM TECHNOLOGIES, INC. | | |
| Defendant(s): | BEACON HILL STAFFING GROUP, LLC | KIMBERLY A. AYERS | WILLIAM BLACKFORD |
| | SCOTT BAILLIE | | |
| Plaintiff Attorney(s): | R. Michael Smith | | |
| Defendant Attorney(s): | Edward J. Longosz, II | Mark Andrew Johnston | |

## 20. TEKsystems, Inc. v. Deal et al
January 21, 2014   MN U.S. Dist. Ct.   0:14-CV-00196   Contracts, Other Contract   Judge(s): Judge John R. Tunheim   Plaintiff

| Plaintiff(s): | TEKsystems, Inc. | | |
| Defendant(s): | Laura Deal | Beacon Hill Staffing Group, LLC | |
| Plaintiff Attorney(s): | Jessica J Schroeder | George R Wood | |
| Defendant Attorney(s): | Gabriel T Dym | Thomas W Pahl | |

## 21. TEKsystems, Inc. v. Sutton, James et al
November 14, 2011   WI U.S. Dist. Ct., West   3:11-CV-00767   Contracts, Other Contract   Judge(s): District Judge Barbara B. Crabb   Plaintiff

| Plaintiff(s): | TEKsystems, Inc. | | |
| Defendant(s): | James Sutton | Beacon Hill Staffing Group, LLC | |
| Plaintiff Attorney(s): | George R. Wood | | |
| Defendant Attorney(s): | David J. Turek | Michael Brian Brennan | |

## 22. Tiro Solutions LLC v. Beacon Hill Staffing Group LLC et al
April 03, 2017   TX U.S. Dist. Ct., North   3:17-CV-00934   Contracts, Other Contract   Judge(s): Judge Sam A Lindsay   None

| Defendant(s): | Beacon Hill Staffing Group LLC | Brian Pelligrini | |
| Plaintiff(s): | Tiro Solutions LLC | | |
| Plaintiff Attorney(s): | Avonte Campinha-Bacote | | |

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

| Defendant Attorney(s): | Jason Edward Winford | David E Watkins |
|---|---|---|

### 23. Update, Inc. v. Mercado et al

| July 09, 2012 A. Crotty | NY U.S. Dist. Ct., South Plaintiff | 1:12-CV-05295 | Contracts, Other Contract | Judge(s): Judge Paul |
|---|---|---|---|---|

| Plaintiff(s): | Update, Inc. | | |
|---|---|---|---|
| Defendant(s): | Priya Mercado | Anna-Maria Licata | Beacon Hill Staffing Group, LLC |
| Plaintiff Attorney(s): | David Jeffrey Kanfer | Joel A. Klarreich | Maryann Concettina Stallone |
| Defendant Attorney(s): | Geraldine Ann Cheverko | | |