# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**AEROTEK, INC.**
**7301 Parkway Drive South**
**Hanover, MD 21076**

      Plaintiff

**vs.**

                                                Civil Action No. 2:18-CV-02645-GEKP

**BEACON HILL STAFFING GROUP, LLC,**
**c/o Corporation Service Company**
**2595 Interstate Dr.**
**Suite 103**
**Harrisburg, PA 17110**

        Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE, STAY THIS ACTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ i

I.      INTRODUCTION ................................................................................................1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ...................................2

III.    ARGUMENT ......................................................................................................6

        A.  Standard of Review ...................................................................................6

        B.  The Complaint Fails to Join a Required Party ...........................................7

        C.  Aerotek Cannot Use This Case to Obtain an Award of Attorney's Fees Based on a
            Still Pending Case in Maryland ................................................................11

        D.  The Complaint Fails to State a Claim Against Beacon Hill .......................13

            1.  The Agreement is Overly Broad and Unforceable ...............................13

            2.  Aerotek Fails to Allege Facts to Support Tortious Interference ............17

        E.  In the Alternative, This Case Should Be Stayed Pending the Outcome in the
            Maryland Case .......................................................................................22

IV.     CONCLUSION...................................................................................................24

## **TABLE OF AUTHORITIES**

### **Cases**

*Acton Co. Inc. of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76 (1st Cir. 1982) ...............10

*Alyeska Pipeline Service co. v. Wilderness Society*, 421 U.S. 240 (1975) ...................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................6, 7, 17

*Becker v. Bailey*, 299 A.2d 835 (Md. 1973) ...............................................................................14

*Clark v. Lacy*, 376 F.3d 682 (7th Cir. 2004) ...............................................................................22

*Cleveland Asphalt v. Coalition*, 886 A.2d 271 (Pa. Super. 2005) ................................................11

*Colorado River Water Conservation District v. U.S.*, 424 U.S. 800 (1976)................................22

*De Lage Landen Financial Services, Inc. v. Rozentsvit*, 939 A.2d 915 (Pa. Super. 2007)............11

*Deutsche Post Global Mail, Ltd. v. Conrad*, 116 Fed. App'x 435 (4th Cir. 2004) .......................13

*Develcom Funding, LLC v. American Atlantic Co.*, 2009 WL 2923064
  (D.N.J. Sept. 9, 2009) ...........................................................................................................10

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).......................................................7, 17

*Fox v. Vice*, 563 U.S. 826 (2011)...............................................................................................11

*Golden v. Cook*, 293 F.Supp.2d 546 (W.D. Pa. 2003).................................................................5

*In re Groupon Derivative Litigation*, 882 F.Supp.2d 1043 (N.D. Ill. 2012) .................................22

*HB General Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185 (3d. Cir. 1996)............................8

*Guadagnin v. LaGioia*, 1996 WL 431830 (E.D. Pa. July 31, 1996)..............................................12

*Holloway v. Faw, Casson & Co.*, 572 A.2d 510 (Md. 1990) .......................................................13

*ImpactOffice, LLC v. Siniavsky*, 2016 WL 8672916 (D. Md. Nov. 18, 2016) .......................14, 15

*Instant Technology, LLC v. DeFazio*, 40 F.Supp.3d 989 (N.D. Ill. 2014), *aff'd* 793 F.3d 748
  (7th Cir. 2015)......................................................................................................................20

*Johnson & Johnson*, 720 F.Supp.  (D. Del. 1989) .......................................................................10

*KForce, Inc. v. Beacon Hill Staffing Group, LLC*, 2015 U.S. Dist. LEXIS 1861
  (E.D. Mo. Jan. 8, 2015).........................................................................................................20

*Krassnoski v. Rosey*, 454 Pa. Super. 78, 684 A.2d 635 (1996) ......................................11

*Lavelle v. Loch*, 532 Pa. 631, 617 A.2d 319 (1992) ......................................11

*Malleus v. George*, 641 F.3d 560 (3d Cir. 2011) ............................................6

*MCS Services, Inc. v. Jones*, 2010 WL 3895380 (D. Md. Oct. 1, 2010) ......................................14

*Medispec, Ltd. v. Chouinard*, 133 F.Supp.3d 771 (D. Md. 2015) ..................................14

*Medix Staffing Solutions v. Dumrauf*, 2018 WL 1859039 (N.D. Ill. Apr. 17, 2018)....................15

*Morgan v. Covington Township*, 648 F.3d 172 (3d Cir. 2011)........................................11

*In re Ormat Technologies, Inc.*, 2011 WL 3841089 (D. Nev. Aug. 29, 2011)............................22

*Ozburn-Hussey Logistics, LLC v. 721 Logistics, LLC*, 13 F.Supp.3d 465 (E.D. Pa. 2014) ..........17

*Provident Tradesmen Bank & Trust Co. v. Patterson,* 390 U.S. 102 (1968) ................................10

*Remington Rand Corp.-Delaware v. Business Systems, Inc.*, 830 F.2d 1274 (3d Cir. 1987)........22

*Silver v. Goldberger*, 188 A.2d 155 (Md. 1963)...........................................................13

*St. Luke Evangelical Lutheran Church, Inc. v. Smith*, 318 Md. 337 (1990)................................22

*Synthes, Inc. v. Emerge Medical, Inc.*, 25 F.Supp.3d 617 (E.D. Pa. 2014) ...................................17

*United Industrial Workers v. Government of the Virgin Islands*, 987 F.2d 162 (3d Cir. 1993)....23

*In re Westell Technologies, Inc. Derivative Litigation*, 2001 WL 755134
        (Del. Ch. June 28, 2001) .........................................................................................22

## **Rules**

Fed R. Civ. P. 12(b) .............................................................................................................1

Fed. R. Civ. P. 19(a)(1).........................................................................................................8

Fed. R. Civ. P. 54(d) .........................................................................................................13

## I.      INTRODUCTION

Defendant Beacon Hill Staffing Group, LLC ("Beacon Hill"), by and through its counsel

of record, hereby submits its Memorandum of Law in support of its Motion to Dismiss the

Complaint of Plaintiff Aerotek, Inc. ("Aerotek").   Beacon Hill moves this Court to dismiss

Aerotek's claims, pursuant to Fed. R. Civ. P. 12(b)(7) and (6), for failure to join a required party

and because the Complaint fails to state a claim.

In the alternative, the proceedings in this case should be stayed because Aerotek is

currently pursuing a parallel case, based on the same alleged facts, in the United States District

Court for the District of Maryland *Aerotek, Inc. v. Obercian*, 1:17-cv-00926-GLR (the

"Maryland Case").

 Aerotek has chosen to sue Ms. Obercian in federal court in Maryland, and, over a year

later, sue Ms. Obercian's former employer, Beacon Hill, based on the exact same set of alleged

facts and the exact same course of conduct alleged against Ms. Obercian.  Ms. Obercian is no

longer an employee of Beacon Hill[1], Aerotek merely alleges in this case that Beacon Hill

*induced* Ms. Obercian to violate her employment agreement with Aerotek (the "Agreement") ,

and the Maryland Case is already pending and is predicated on the issue of whether Ms.

Obercian did, in fact, violate her Agreement.  Aerotek even seeks to use the instant case to obtain

recovery of attorney's fees – from Beacon Hill – that it has expended in its case against Ms.

Obercian in the Maryland Case.  It is clear that the issues and parties in this case and in the

Maryland Case are substantially or functionally identical.  The two cases are parallel, and this

---

[1] The Complaint asserts that Ms. Obercian resigned her employment with Beacon Hill,
scheduling March 28, 2018 as her last day of work. Complaint ¶ 1.

case should be stayed to avoid duplicative litigation and, potentially, inconsistent results

concerning whether Ms. Obercian did, in fact, breach a valid agreement with Aerotek.

## II.        RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Aerotek alleges that Ms. Obercian was hired on or about January 13, 2014 to the position

of "Operations Manager – Clinical Solutions for Aerotek Clinical Solutions ("ACS"), a division

of Aerotek's affiliate, Aerotek Scientific, LLC." Complaint, at ¶ 12.   Ms. Obercian's title

changed during her employment with ACS to "Practice Lead," but Aerotek alleges that her

"duties and responsibilities largely remained the same." *Id.* at ¶ 12.

On January 13, 2014, Ms. Obercian signed an Employment Agreement with Aerotek (the

"Agreement"). *Id.*, at ¶ 22, Exhibit A.[2]   The Agreement contains certain covenants, including a

"Non-Compete Covenant" which states that, for 18 months after termination of Ms. Obercian's

employment with Aerotek, she "shall not directly or indirectly engage in or prepare to engage in,

or be employed by, any business that is engaging in or preparing to engage in any aspect of

AEROTEK'S Business for which [Ms. Obercian] performed service or about which [Ms.

Obercian] obtained Confidential Information during the two (2) year period preceding

termination of [Ms. Obercian's] employment, within a radius of fifty (50) miles from the office

in which [she] worked at the time [her] employment terminated or any other office in which

[she] worked during the two (2) year period preceding termination of [her] employment

("Restricted Area")." Complaint, at ¶ 23.

In relevant part, the Agreement also contained a "Non-Solicitation Covenant", purporting

to prohibit Ms. Obercian from "communicat[ing] with any individual, corporation or other entity

---

[2] Aerotek does not allege that Ms. Obercian signed any other employment agreements with
Aerotek over the years she worked for ACS, even when her job title changed.  The Agreement,
by its very terms, is an "at will" employment agreement. *Id.*, at 3.

which is a customer of Aerotek and about which [she] obtained Confidential Information or with which [she] did business on Aerotek's behalf during the two (2) year period preceding" termination of her employment" for the purpose of "entering into any business relationship with such customer of AEROTEK if the business relationship is competitive with any aspect of AEROTEK'S Business for which [Ms. Obercian] performed services or about which [she] obtained Confidential Information during the two (2) year period preceding termination of employment." *Id.*

Aerotek alleges that "ACS offered to its pharmaceutical clients a combination of permanent and temporary staffing services as well as more comprehensive solutions services (which encompassed staffing as a component) for clinical trials and other projects including, but not limited to, project staffing / personnel, monitoring studies, project / study management, and clinical program management." *Id.* at ¶ 13. Ms. Obercian worked in Aerotek's Wayne, Pennsylvania office, which Aerotek alleges provided both staffing services and solutions services to Aerotek's clients. *Id.* at ¶ 14. It does not allege that Ms. Obercian performed staffing services while at ACS. Aerotek claims that during her employment with ACS, Ms. Obercian had "access" to certain allegedly proprietary and confidential information". *Id.*, at ¶ 16.

On December 1, 2016, Ms. Obercian resigned. Complaint, at ¶ 26. Aerotek does not allege that Ms. Obercian took any documents or information from Aerotek, but claims that, by the fact of her employment with ACS, she had knowledge of certain categories of information which Aerotek claims to be "confidential, proprietary and trade secret information." *Id.* at ¶ ¶ 27-28. Aerotek alleges the Ms. Obercian had applied for, interviewed for, and engaged in employment negotiations with Beacon Hill prior to leaving ACS. *Id.* at ¶ 29. Aerotek alleges that Ms. Obercian had provided to a Mr. Pirnat, Managing Director of Beacon Hill Pharma and

3

Ms. Obercian's future supervisor, a presentation outlining potential business strategies for the Beacon Hill Pharma division in the Philadelphia area. *Id.*, at ¶ 31.  Aerotek further alleges that on or about November 11, 2016, Mr. Pirnat requested that Ms. Obercian provide him with a copy of the Agreement for him to review, and that Ms. Obercian provided the Agreement to him. *Id.* at ¶ 32.

Aerotek alleges that Beacon Hill offered Ms. Obercian the position of Division Director for Beacon Hill Pharma in the Southeastern Pennsylvania and New Jersey marketplaces, in a November 28, 2016 offer letter in which Beacon Hill also, allegedly, agreed to pay defense costs for Ms. Obercian should Aerotek file suit against her in connection with the Agreement. *See id.* at ¶¶ 34-35.

Ms. Obercian began working for Beacon Hill on or about December 5, 2016. Complaint, at ¶ 36.  Aerotek alleges that Ms. Obercian "was tasked with securing office space for the new Beacon Hill Pharma division, eventually selecting a location in King of Prussia, Pennsylvania – fewer than ten (10) miles from the Aerotek office where she had just worked." *Id.*, at ¶ 39. Aerotek claims that Ms. Obercian's duties as Division Director at Beacon Hill were "the same, *or certain of the same*, duties as she had performed for Aerotek." *Id.*, at ¶ 40 (emphasis supplied).

Aerotek alleges that, in the fall of 2017, Ms. Obercian "competed with Aerotek to fill two pharmaceutical staffing positions at an existing Aerotek client," although Aerotek does not identify the alleged Aerotek "client" or explain if the "client" was a customer of Aerotek at the time Ms. Obercian was employed by Aerotek. Complaint, at ¶ 41.  Aerotek alleges that Aerotek lost busines and revenue because the "client" selected candidates for the two job openings submitted by Beacon Hill. *Id.*  Aerotek alleges generally that Ms. Obercian communicated with,

solicited or "conducted business with" more than one unidentified Aerotek client or customer with which she had done business or about which she had obtained "confidential information" while at Aerotek, but does not allege that Aerotek lost any business as a result. *Id.*, at ¶¶ 42-44.

On April 6, 2017, Aerotek filed the Maryland Case against Ms. Obercian, alleging breach of contract and other claims. *See Aerotek, Inc. v. Obercian*, 1:17-cv-00926-GLR, District of Maryland, at ECF Doc. 1.  On June 5, 2018, Aerotek filed an Amended Complaint, which Amended Complaint included only one cause of action, alleged breach of contract, based on Aerotek's allegation that Ms. Obercian had breached the non-compete and other provisions of the Agreement during her employment with Beacon Hill. *See id.*, at ECF Doc. 37.[3]  Notably, Aerotek made no attempt to enjoin Ms. Obercian for the harms allegedly caused.  Instead, it seeks money damages, including attorney's fees.  Ms. Obercian filed a counterclaim, seeking wages still owed to her by Aerotek.  Aerotek did not name Beacon Hill as a defendant in that lawsuit, and Beacon Hill is not a party to the Maryland Case.  Discovery in the Maryland Case has been completed, and the parties have filed summary judgment papers. *See id.*, at ECF Doc. 41 and 48.

In its Complaint in this case, Aerotek claims that it "recently learned that Obercian resigned her employment with Beacon Hill, scheduling March 28, 2018 as her last day of work." Complaint, at ¶ 1.  On June 22, 2018, Aerotek filed the Complaint in this case, alleging one count against Beacon Hill: tortious interference with Ms. Obercian's Agreement. Use ECF Doc.

---

[3] This Court may take judicial notice of the documents filed in the Maryland Case, as it is a related case and Aerotek's Complaint in this case relies, in part, on the litigation in the Maryland Case.  *See, e.g., Golden v. Cook,* 293 F.Supp.2d 546, 551 (W.D. Pa 2003) (on a motion to dismiss, the court may consider "publicly available records and transcripts from judicial proceedings in related or underlying cases which have a direct relation to the matters at issue.") (citations omitted).

1.  Aerotek claims that it "seeks damages from Beacon Hill based on its wrongful interference with Aerotek's contractual rights, including the attorney's fees incurred in the Maryland Litigation [against Obercian] as well as other damages for lost business." *Id.*   The Complaint in this case essentially alleges the same the breaches of contract alleged against Ms. Obercian in the Maryland Case, but now alleges that Beacon Hill "encouraged, approved and/or ratified Obercian's unlawful and improper actions and has done so without privilege to do so," and makes the conclusory assertion that Beacon Hill acted "with the intent to cause Obercian to violate her contractual obligations to Aerotek." Complaint, at ¶ 47.  Aerotek alleges that Beacon Hill "had knowledge of the Agreement, and the non-compete restriction in particular" when Beacon Hill hired Ms. Obercian, and that Beacon Hill "improperly interfered" with her performance of the Agreement "by employing her, continuing to employ her, and endorsing and/or ratifying her breach of the Agreement." *Id.* at ¶¶ 55, 58.  Aerotek claims to have suffered damages "including the loss of business and revenue as well as the attorneys' fees it has incurred, and is incurring, in the Maryland Litigation." *Id.*, at ¶ 60.

## III.   ARGUMENT

### A.   Standard of Review

With respect to motions filed pursuant to Federal Rule of Civil Procedure 12(b)(6), when considering a motion to dismiss for failure to state a claim, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir.2011). "First the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). Second, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Last, once the well-pleaded facts have

been identified and the conclusory allegations disregarded, a court must determine whether the "facts alleged in the complaint are sufficient to show the plaintiff has a 'plausible claim for relief.' " *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

**B.     The Complaint Fails to Join a Required Party**

At the outset, it should be noted that Aerotek has needlessly elected to pursue litigation based on the exact same set of facts in a piecemeal fashion in two separate jurisdictions and in two separate civil actions, and waited over a year after suing Ms. Obercian to bring its claims against Beacon Hill – claims that are wholly based upon the conduct alleged against Ms. Obercian in the Maryland case.  Ms. Obercian is no longer even an employee of Beacon Hill, as Aerotek itself notes in its Complaint, at ¶ 1.  Notably, Aerotek has pursued an entire case against Ms. Obercian in Maryland for over a year, waiting until it had allegedly incurred over $150,000 in damages (apparently primarily based upon its attorney's fees expended in the Maryland case) before suing Beacon Hill for these alleged damages or ever attempting to obtain a preliminary injunction in the Maryland Case. *See, e.g., See Aerotek, Inc. v. Obercian*, 1:17-cv-00926-GLR, District of Maryland.

Rather than suing both Ms. Obercian and Beacon Hill in this jurisdiction from the outset (where Aerotek could have established personal jurisdiction over both defendants and argued for the application of Maryland Law, to the extent that the governing law provisions of the Agreement are valid and enforceable), Aerotek sued only Ms. Obercian in Maryland, then waited a whole year to begin an entirely new lawsuit in which it *again* accuses Ms. Obercian of multiple breaches of contract but names only Beacon Hill as defendant.  Aerotek has needlessly created a situation that wastes judicial resources and in which it has started a duplicative lawsuit in which

it has not, and now cannot, join a required party – Ms. Obercian.

This complaint must be dismissed under Rule 12(b)(7) of the Federal Rules of Civil Procedure for failure to join Ms. Obercian, a necessary and indispensable party under Rule 19. The Third Circuit "recognize[s] that one of Rule 19's purposes is to avoid piecemeal litigation . . . *caused by the failure to join an interested person*." *HB General Corp. v. Manchester Partners, L.P.*, 95 F. 3d 1185, 1198 n.9 (3d Cir. 1996) (emphasis in original). The Court's first task in deciding whether to dismiss a complaint under Rule 12(b)(7) is to determine whether the party is necessary under Fed. R. Civ. P. 19(a)(1), which provides that a party must be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Once a court determines that a party is necessary under Rule 19(a)(1), it must then consider whether that party is indispensable under Rule 19(b), which provides the court with four factors to consider in its determination of whether an action can proceed. Those factors are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Ms. Obercian is a necessary and indispensable party, but she cannot be joined to *this* action because she has already been sued on the exact same facts in the Maryland Case, a case which she has already had to defend against for over a year.  As a result, the Court must dismiss the Complaint under Fed. R. Civ. P. 12(b)(7).

Ms. Obercian is a necessary party to this case because she has an interest in the outcome of this litigation and disposing of this action in her absence may: (i) as a practical matter impair or impede her ability to protect the interest; or (ii) leave the existing party in this case (Beacon Hill) subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. *See* Rule 19(a)(1).  Ms. Obercian is already defending another lawsuit claiming that she breached the Agreement, and Aerotek seeks in this lawsuit a judgment and damages based on the exact same alleged conduct as Ms. Obercian is defending against in the Maryland Case.  Further, Beacon Hill could be subject to a substantial risk of incurring double, multiple or inconsistent obligations – Aerotek seeks the same damages against Beacon Hill in *this* case as it is seeking against Obercian in the Maryland Case.  Alternatively, Beacon Hill is at risk of being held responsible for alleged conduct by Ms. Obercian that the Maryland Case may determine did not occur.

Ms. Obercian is also an indispensable party to this case.  A judgment rendered in her absence in this case – such as a judgment finding that she breached the Agreement – could prejudice Ms. Obercian as she defends against the parallel litigation in Maryland.  *See* Rule 19(b).  An action need not have preclusive effect on the absent party to be prejudicial.  "Even if [the absent party] would not be legally bound, an adverse ruling would be a persuasive precedent in a subsequent proceeding, and would weaken [the absent party's] bargaining position for settlement purposes." *Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir.

9

1982).  Further, Beacon Hill would be prejudiced by an inconsistent ruling in this case, since it could be found liable for inducing Ms. Obercian to engage in conduct (a breach of contract) that the court in the Maryland Case may determine never actually occurred.

With respect to the second prong of the analysis, there is no way to lessen the prejudice by protective provisions in the judgment, shaping the relief, or other measures.  Aerotek has sought relief for the same alleged damages against both Ms. Obercian and Beacon Hill, and there is no way to craft any potential judgment or relief to prevent prejudice from potentially duplicative damages or inconsistent findings.

The third factor asks whether a judgment rendered in Ms. Obercian's absence would be adequate.  This factor "promotes judicial economy by avoiding going forward with actions in which the court may end up rendering hollow or incomplete relief because of the inability to bind persons who could not be joined."  *Develcom Funding, LLC v. American Atlantic Co.*, 2009 WL 2923064, at *4 (D. N.J. Sept. 9, 2009).  As the Supreme Court articulated in *Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968), the adequacy criterion "refer[s] to [the] public stake in settling disputes by wholes."  Here, the Court, "saddled with the absence of [the non-joined party], is essentially being asked [by plaintiff] to decide the case with one hand behind its back."  *Johnson & Johnson*, 720 F. Supp. at 1127 (D. Del. 1989).  *See also Develcom*, 2009 WL 2923064, at *4 ("The conclusion that additional litigation may result suggests that proceeding without the absent party may be inappropriate.").  Any judgment rendered in this action would be far from adequate, since Aerotek is seeking relief for alleged misconduct by Ms. Obercian – misconduct that is currently being addressed in additional litigation.  This factor also weighs in favor of dismissal.

The fourth and final factor asks whether Aerotek would have an adequate remedy were the action to be dismissed.  Aerotek is already pursuing its remedies for the alleged damage caused by Ms. Obercian's alleged breach of the Agreement, in the Maryland Case.  Aerotek had the option to sue – and should have sued – both Ms. Obercian and Beacon Hill in the proper jurisdiction, and to pursue all claims arising from this alleged set of facts in the same case.  Hence, this fourth factor favors dismissal.

All four of the Rule 19(b) factors support the conclusion that Ms. Obercian is an indispensable party, and therefore this action cannot, "in equity and good conscience," proceed in her absence.  However, her joinder is not possible because of Aerotek's decision to proceed with litigation against her, separately, in another jurisdiction.  The longstanding rule against improper claim splitting prohibits a plaintiff from prosecuting his or case piecemeal, requiring that all claims arising out of a single alleged wrong be presented in one action. *See Prewitt v. Walgreens Co.* 2013 WL 6284166, * 5 (E.D.Pa. 2013).  The preclusion of a claim not only prohibits a plaintiff from filing duplicative suits and from circumventing earlier court rulings, it is in keeping with "the rule that a plaintiff must bring suit against the same defendant on all claims that relate to the same conduct, transaction or event at the same time." *Id.* (citations omitted).[4]  Because of the way Aerotek has chosen to pursue its claims, it cannot now join Ms. Obercian in this case, and it therefore must be dismissed pursuant to Rule 12(b)(7) and Rule 19.

**C.     Aerotek Cannot Use This Case to Obtain an Award of Attorney's Fees Based on a Still-Pending Case in Maryland**

---

[4] A plaintiff also may not circumvent this rule by starting a new action and consolidating the two cases, as this would undermine the public policy behind *res judicata* and against claim-splitting. The doctrines promote judicial economy by protecting defendants from having to defend against multiple identical, or nearly identical, lawsuits and by protecting courts from having to expend judicial resources on piecemeal litigation. *Morgan v. Covington Twp.,* 648 F.3d 172, 177 (3d Cir. 2011); *Churchill v. Star Enters.,* 183 F.3d 184, 194 (3d Cir. 1999).

Aerotek's claim of damages in this case is based, in large part, on its assertion that it has incurred attorney's fees in the separate lawsuit it is pursuing against Ms. Obercian in the federal district court in Maryland. *See* Complaint, at ¶ 60.  However, the "American Rule" provides that each party must pay their own attorney's fees. *Fox v. Vice*, 131 S. Ct. 2205 (2011); *Krassnoski v. Rosey*, 454 Pa. Super. 78, 83, 684 A.2d 635, 637 (1996).  Attorney's fees "may not be taxed to [a] party absent express statutory authorization, a clear agreement of the parties, or some other established exception." *De Lage Landen Fin. Serv., Inc., v. Rozentsvit*, 939 A.2d 915, 923 (Pa. Super. 2007); *Cleveland Asphalt v. Coalition*, 886 A.2d 271, 282 n. 6 (Pa. Super. 2005) (quoting *Lavelle v. Loch*, 532 Pa. 631, 617 A.2d 319 (1992)).

The only cause of action in this case is tortious interference with contract, a common law claim for which there is no statutory provision allowing for attorney's fees.  "It has long been the rule in this jurisdiction, that attorney's fees and costs are not recoverable in tort or contract absent express statutory or contractual allowance, or some other established exception." *Guadagnini v. LaGioia,* 1996 WL 431830, *3 (E.D. Pa July 31, 1996).  There is no agreement – express or otherwise – between Aerotek and Beacon Hill that Beacon Hill will pay Aerotek's attorney fees in this or any other litigation if Aerotek prevails, and there is no other exception that would allow Aerotek to obtain its attorney's fees from Beacon Hill.

Further, Aerotek is actually claiming damages based on attorney's fees it has incurred in the Maryland Case, a case it brought in another jurisdiction against Ms. Obercian but not Beacon Hill.[5]  The Maryland Case is still pending, and therefore Aerotek cannot claim to be the

---

[5] Maryland also applies "the American Rule, [which] prohibits the prevailing party in a lawsuit from recovering his attorney's fees as an element of damages." *St. Luke Evangelical Lutheran Church, Inc. v. Smith*, 318 Md. 337, 344 (Md.1990) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)).

prevailing party in that litigation or entitled to attorney's fees in that case, and it certainly cannot

seek to hold Beacon Hill responsible for such alleged fees in a later-filed action.[6] It is settled law

that "[c]ounsel fees cannot be sued for separately from the principal claim," because the matter is

connected but ancillary to the underlying action, and allowing separate suits would "constitute an

impermissible splitting of but one cause of action." *Goldberg v. Goldberg,* 306 Pa.Super. 504,

506, 452 A.2d 838, 839 (1982). Further, under the Federal Rules of Civil Procedure, a claim for

attorney's fees must be made by motion *after* a judgment has been entered, and the motion must

specify the judgment and the statute, rule or other grounds entitling the movant to the award. *See*

Fed.R.Civ.P. 54(d)(2). Aerotek is not the prevailing party in the Maryland Case, and has

obtained no judgment in its favor to date.   It may not attempt to get around the well-settled

"American Rule," or the requirements of Rule 54(d) by using this litigation to obtain from

Beacon Hill attorney's fees allegedly expended in the still-pending Maryland Case.

**D.     The Complaint Fails to State a Claim Against Beacon Hill**

**1.           The Agreement is Overly Broad and Unenforceable**

The Agreement is facially overbroad, even under Maryland law, which the Agreement

states is the governing law (*See* Complaint, Exhibit A, at 10). In Maryland, a restrictive

covenant must meet four requirements to be enforceable: "(1) the employer must have a legally

protected interest, (2) the restrictive covenant must be no wider in scope and duration than is

reasonably necessary to protect the employer's interest, (3) the covenant cannot impose an undue

hardship on the employee, and (4) the covenant cannot violate public policy." *Deutsche Post*

*Global Mail, Ltd. V. Conrad*, 116 Fed App'x 435, 438 (4th Cir. 2004) (citing *Silver v.*

---

[6] To the extent Aerotek argues that the Agreement has a provision for an award of attorney's fees, Beacon Hill is not a party to the Agreement.

*Goldberger*, 188 A.2d 155, 158 (Md. 1963)).

While businesses have a protectable interest in preventing an employee from using contacts established to "pirate the employer's customers," *Holloway v. Faw, Casson & Co.*, 572 A.2d 510, 515 (Md. 1990), the Maryland courts are primarily concerned with an employee trading on customer goodwill they helped create for the employer. *See Deutsche Post Global Mail*, 116 F. App'x at 438 (citing *Silver*, 188 A.2d at 158-159). "[T]here is no justification for restraint where a former employee does no more than become an efficient competitor of his former employer, and does not do so by exploiting his personal contacts with customers or clients of his former employer." *Becker v. Bailey*, 299 A.2d 835, 840 (Md. 1973) (*quoting Silver*, 188 A.2d at 159). The scope of activity prohibited by a restrictive covenant must not be wider than necessary to protect an employer's interest in preventing the loss of goodwill. *See ImpactOffice, LLC v. Siniavsky*, 2016 WL 8672916, at *4 (D. Md. 2016) (finding a non-compete overbroad and unenforceable because the "language of the provision would bar [the employee] from working for an Impact competitor in any position, even if that position afforded him no opportunity to take advantage of any personal relationships with customers that he had developed while at Impact.").

A covenant that purports to prevent an employee from working for a competitor in any capacity is not reasonably tailored to protect an employer's interest in protecting customer goodwill. *Id.* Maryland courts have consistently held unenforceable restrictive covenants designed at preventing an employee from working for any competitor, regardless of the employee's new responsibilities, or whether they would create an opportunity for the exploitation of the former employer's goodwill. *See Medispec, Ltd. v. Chouinard*, 133 F. Supp. 3d 771, 774 (D. Md. 2015) (non-compete was overbroad on its face because "[a]s written, the

14

non-compete clause would broadly prohibit Defendant from being employed by, engaging with, or being connected to, either directly or indirectly, any direct or indirect competitor of Medispec" and the non-compete effectively prevented the former employee from "taking any job, no matter how unrelated to his prior sales work, with a company that indirectly competes with Medispec or its affiliates and subsidiaries."); *see also MCS Services, Inc. v. Jones*, 2010 WL 3895380, *3-4 (D. Md. 2010) (The restraint at issue was overbroad and enforceable because "[i]t constrains the list of Jones' potential employers instead of targeting possible goodwill-thieving activities. Taken literally, the covenant would prevent Jones from working in any capacity for a competitor").[7]

The non-compete covenant contained in the Agreement is facially overbroad and unenforceable because it focuses on the business of the future employer, rather than the employee's actual job responsibilities.  It is thus designed to prohibit competition generally, rather than to protect against the possibility that a former employee will exploit Aerotek's customer goodwill.  The non-competition clause contained in the Agreement purports to prohibit Ms. Obercian from "directly or indirectly" engaging in or preparing to engage in, "or be employed by, any business that is engaging in or preparing to engage in any aspect of AEROTEK's Business" for which Ms. Obercian performed services or about which Ms. Obercian obtained confidential information in the two years preceding her termination.  *See* Agreement, Ex. A, at 4-5.  The Agreement is facially overbroad and unenforceable because its limitation focuses on the nature of the business of the future employer – rather than the role the

---

[7] Other jurisdictions have also invalidated non-competes on this basis.  *See, e.g., Medix Staffing Solutions v. Dumrauf*, 2018 WL 1859039 (N.D. Ill. 2018) ("[T]he Covenant clearly would prevent Dumrauf from taking any number of more plausible roles at another industry player, no matter how far removed from actual competition with Medix. Such a prohibition is unenforceable.").

employee may have at the future employer, and whether such role will involve exploiting

customer good will.  Such breadth in a non-compete is impermissible under Maryland law.  *See*

*ImpactOffice*, 2016 WL 8672916 at *4.

   The Agreement's overbreadth is demonstrated by the fact that Aerotek attempts to apply

the Agreement's non-compete provision to prevent Ms. Obercian from performing different

work for Beacon Hill than the work that she did while providing clinical solutions services for

ACS, a division of Aerotek's affiliate.  Aerotek does not allege that Ms. Obercian oversaw or

performed staffing services while working in the ACS division of Aerotek Scientific, LLC.

Instead, Aerotek alleges that the Aerotek *office* in which Ms. Obercian worked "provided both

staffing services and solutions services to Aerotek's clients," and alleges that Ms. Obercian

"worked with Aerotek's staffing placement personnel," but Aerotek notably does not claim,

because it cannot claim, that *Ms. Obercian* provided staffing services, such as recruiting

candidates or selling staffing services to customers, or that Ms. Obercian. *See id.*, at ¶¶ 12-14.  In

the Complaint, Aerotek admittedly refers to the clinical solutions services and staffing services

as distinct services. *See id.*, at ¶¶ 12-14.   Again, Aerotek does not  allege that Ms. Obercian

"performed services" for Aerotek's separate and distinct staffing business, rather, Aerotek can

only allege that Ms. Obercian was the "Operations Manager-Clinical Solutions" and then

"Practice Lead" for the Aerotek Clinical Solutions division of Aerotek's affiliate Aerotek

Scientific, LLC. *Id.*

   Beacon Hill, by contrast, is "engaged in the business of recruitment and placement of

employees to address clients' staffing needs. Complaint, at ¶ 37.   In her role as Director of

Beacon Hill Pharma, focusing on the Pennsylvania and New Jersey pharmaceutical markets, Ms.

Obercian's job duties involved, in relevant part, oversight of "direct- and temporary-staffing

operations" and managing her own customers to provide staffing services. *See id.*, at ¶¶ 40-41.
To the extent the Agreement precludes Ms. Obercian from working for an alleged competitor of
Aerotek's in any capacity, the Agreement is overbroad and unenforceable.  As such, Beacon Hill
cannot have tortiously interfered with a binding contractual relationship.

**2.          Aerotek Fails to Allege Facts to Support Tortious Interference**

Even if the Agreement is enforceable against Ms. Obercian, Aerotek fails to allege
sufficient facts to plausibly support a claim that Beacon Hill tortiously interfered with the
Agreement.  To prove tortious interference with an existing or prospective contract under
Pennsylvania law, a plaintiff must prove four elements: (1) the existence of a contractual
relationship or prospective contractual relationship between the plaintiff and another party; (2) an
intent on the part of the defendant to harm the plaintiff by interfering with that contractual
relationship or preventing the relationship from occurring; (3) the absence of privilege or
justification on the part of the defendant; and (4) the occasioning of actual damage as a result of
defendant's conduct. *Synthes, Inc. v. Emerge Medical, Inc.,* 25 F.Supp.3d 617, 730 (E.D.Pa 2014)
(citations omitted).  Pursuant to the Restatement (Second) of Torts, which Pennsylvania has
adopted, the plaintiff must also show that the interference was "improper." *Ozburn-Hessey
Logistics, LLC v. 721 Logistics, LLC*, 13 F.Supp.3d 465, 479 (E.D.Pa 2014).

While the Court "must accept all of the complaint's well-pleaded facts as true," it may
disregard any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir.
2009).  Further, the Court must determine whether the "facts alleged in the complaint are
sufficient to show the plaintiff has a 'plausible claim for relief.' " *Id*. at 211 (quoting *Iqbal*, 556
U.S. at 679).  The Complaint fails to allege facts sufficient to show a plausible claim that Beacon
Hill caused Ms. Obercian to breach the Agreement, used improper means to do so, or acted with

17

intent to harm Aerotek by interfering with the Agreement.  Rather, it alleges conduct by Ms. Obercian that allegedly breached the Agreement and tries to simply impute that conduct to Beacon Hill.  A plaintiff may not establish tortious interference by simply imputing the actions of the party allegedly breaching the contract to another, because tortious interference requires intentional conduct by the party not subject to the contract.

Aerotek asserts, in conclusory fashion, that Beacon Hill "encouraged, approved and/or ratified Ms. Obercian's unlawful and improper actions," and that Beacon Hill "interfered with Obercian's performance of the Agreement by employing her, continuing to employ her, and endorsing and/or ratifying her breach of the Agreement," but does not allege actual facts supporting a plausible claim that Beacon Hill intentionally interfered with the Agreement or that Beacon Hill did so with intent to harm Aerotek. Complaint, at ¶¶ 47, 58.

First, Aerotek's allegations about other lawsuits against Beacon Hill, Beacon Hill's alleged conduct with respect to the hiring of employees other than Ms. Obercian, and its characterizations of Beacon Hill's alleged "business model" are irrelevant and do not establish that Beacon Hill acted improperly to interfere with Ms. Obercian's Agreement or that Beacon Hill did so to harm Aerotek. *See* Complaint, at ¶¶ 48-50.

The Complaint does not allege facts supporting an intent by Beacon Hill to harm Aerotek by interfering with the Agreement.  Aerotek alleges that a Beacon Hill employee, Ryan Pirnat, stated that he would review Ms. Obercian's Agreement.  However, the Complaint does not allege that Mr. Pirnat actually reviewed the Agreement, or that Beacon Hill ever interpreted or understood the Agreement to preclude Ms. Obercian (who had worked as Operations Manager and Practice Lead for clinical solutions at ACS) from working in the position for which Beacon Hill intended to hire her (primarily, overseeing direct and temporary staffing, and managing her

18

own book of staffing customers). Complaint, at ¶¶ 12-14, 40.  The Agreement purported to restrict Ms. Obercian from being employed by "any business that is engaging in or preparing to engage in any aspect of Aerotek's Business for which EMPLOYEE performed service or about which EMPLOYEE obtained Confidential Information during the two (2) year period preceding termination of EMPLOYEE's employment …" *See* Complaint, at Exhibit A, at 7.  Aerotek alleges no facts to support a contention that Beacon Hill knew which "aspect[s] of Aerotek's Business" Ms. Obercian "performed service" for, or about which she "obtained Confidential Information."  Notably, the Agreement does not describe Ms. Obercian's job duties, and it does not even accurately state or describe the positions in which Ms. Obercian actually worked at ACS (Operations Manager – Clinical Solutions and later "Practice Lead"). *See* Complaint, at ¶ 12.[8]  Further, while the Complaint alleges that Ms. Obercian violated the non-solicitation provisions of the Agreement by soliciting or attempting to obtain business from Aerotek "clients" or "customers," it alleges no facts supporting a claim that Beacon Hill directed her to do so, or even any facts indicating that Beacon Hill was aware of the identity of Aerotek's customers, or had knowledge of which customers Ms. Obercian had provided services to, conducted business with, or obtained allegedly confidential information about while she was employed at ACS.

There are no allegations supporting a claim of actual damage caused by Beacon Hill's alleged interference with the Agreement.  As explained in detail above, Aerotek may not use this lawsuit to extract from Beacon Hill the attorney's fees that Aerotek spent suing Ms. Obercian in

---

[8] *See* Complaint at Exhibit A, at 2-3 (erroneously stating that "Aerotek hereby employs or agrees to continue to employ the above named EMPLOYEE for the position of Recruiter (including but not limited to Recruiter Trainee, Recruiter II, Senior Recruiter, Professional Recruiter, and Account Recruiting Manager) or Account Manager, (including, but not limited to Contracts Manager, Account Executive, and Sales Manager) …").

the Maryland Case, especially where Aerotek has obtained no judgment in that case establishing

that it is entitled to attorney's fees.  The only other injury alleged by Aerotek is the claim that, in

the "fall of 2017" (almost a year after Ms. Obercian's December 1, 2016 departure from ACS),

"Obercian and Beacon Hill's candidates were selected for" two pharmaceutical staffing positions

at an alleged "existing client" of Aerotek, "beating out Aerotek" and, allegedly, "causing it to

lose business and revenue." Complaint, at ¶ 41.  There are no facts in the Complaint explaining

whether Aerotek even submitted any appropriate candidates for the position, or why Aerotek

believes it would have received the business if the client had not hired the candidates found by

Beacon Hill.

Aerotek does not claim that it had any exclusive arrangement with the client, and alleges

no facts to support its contention that – but for Beacon Hill's alleged interference – Aerotek

would have been able to fill the job openings.  Courts have described the staffing industry as an

industry in which there is substantial customer overlap, and where companies seeking to fill open

positions will often request multiple staffing agencies to assist in filling the same job openings.

*See, e.g., KForce, Inc. v. Beacon Hill Staffing Group, LLC,* No. 4: 14 CV 1880 CDP, 2015 U.S.

Dist. LEXIS 1861, *4-5 (E.D. Mo. 2015).  A staffing agency, such as Beacon Hill or Aerotek,

will get the business if they are able to find a candidate that is appropriate for the position and if

the customer ultimately hires that candidate. *Instant Technology, LLC v. DeFazio*, 40 F. Supp. 3d

989 (N.D. Ill. 2014), *aff'd*., 793 F.3d 748 (7th Cir. 2015) (in a case involving information

technology staffing, the court explained that clients who are seeking employees "want to fill their

IT needs as soon as possible and consequently solicit candidates through multiple IT staffing

firms and through a number of different online job boards.").  There is no guarantee that a client

will ultimately hire the candidate or candidates submitted by any one staffing agency.

Further, the Complaint does not allege that the unidentified "client" was a "customer of Aerotek" *during* Ms. Obercian's tenure with ACS, or that she obtained "Confidential Information" or did business for the "client" on Aerotek's behalf during the two years before her December 1, 2016 resignation.   In fact, the Complaint alleges that Ms. Obercian had attended a meeting to try and "pitch Aerotek's staffing and clinical solutions services" to this unidentified client on the day she resigned, indicating it was not a "customer of Aerotek" at that time, or a customer for which Ms. Obercian had performed services. *Id.*   "The Non-Solicitation Covenant of the Agreement prohibits communication with an entity "which is a customer of AEROTEK and about which EMPLOYEE obtained Confidential Information or with which EMPLOYEE did business on AEROTEK'S behalf" during the two year period preceding termination of the employee's employment, if such communication is for the purpose of entering into a business relationship "competitive with any aspect of AEROTEK's Business for which EMPLOYEE performed services or about which EMPLOYEE obtained Confidential Information" or for the purpose of "reducing or eliminating the business such customer conducts with AEROTEK." Complaint, at ¶ 23.  The Complaint's allegations do not support an assertion that Ms. Obercian breached this provision, much less a claim that any wrongful interference by Beacon Hill caused her to breach or caused Aerotek actual damage.

To the extent that the Complaint vaguely alleges that Ms. Obercian contacted, solicited, or "conducted business" with other, unidentified alleged clients or customers of Aerotek (other than the unidentified client for whom Ms. Obercian allegedly placed two candidates for job openings), the Complaint alleges no facts to plausibly suggest that any such contact or solicitation or "business" caused Aerotek any actual harm. *See, e.g.*, Complaint, at ¶¶42-44.

**E.      In the Alternative, This Case Should Be Stayed Pending the Outcome in the Maryland Case**

If this Court does not dismiss this case, in the alternative, it should stay this case while the parallel federal case, the Maryland Case, is pending.  This case is predicated entirely on a finding that the Agreement is valid and enforceable, that Ms. Obercian violated the Agreement, and that Beacon Hill somehow intentionally, and unjustifiably, induced her to do so.   Whether or not Ms. Obercian actually violated an enforceable Agreement is already the subject of the Maryland Case, which case has been pending for over a year, and in which both parties have completed discovery and have recently filed cross-motions for summary judgment.  The motions for summary judgment are still pending.  Further, Aerotek is attempting to recover in this case the attorney's fees it has expended in the Maryland Case against Ms. Obercian – even though Aerotek has not prevailed in the Maryland Case to date, and may not prevail.

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188–89 (1959)). However, if a parallel action is before another federal district court, "the general principle is to avoid duplicative litigation." *Id.* at 817; *see also Remington Rand Corp.-Delaware v. Business Systems Inc.*, 830 F.2d 1274, 1276 (3d Cir. 1987) ("[A]s a general principle, duplicative litigation in the federal court system is to be avoided.") (citations omitted).  A stay eliminates concerns of duplicative litigation.  *See, e.g., Clark v. Lacy*, 376 F.3d 682, 687 (7th Cir. 2004).

When considering whether federal actions are parallel, the parties and issues need only be substantially similar or functionally identical to issue a stay. *See In re Groupon Derivative Litig.*,

22

882 F. Supp. 2d 1043, 1049–51 (N.D. Ill. 2012) ("Although the class action contains different plaintiffs and additional defendants, the parties in both cases need not be perfectly aligned for the court to issue a stay"); *see In re Ormat Techs., Inc.,* 2011 WL 3841089, at \*5 (D.Nev. Aug. 29, 2011) ("We do not believe that the two actions must involve exactly the same parties ... in order for a stay [sic ]."); *In re Westell Techs., Inc. Derivative Litig.*, 2001 WL 755134, at \*2 (Del.Ch. June 28, 2001) (the parties in the two actions need only be substantially or functionally identical to issue a stay).

Here, Aerotek has filed this lawsuit based on the exact same alleged facts as the Maryland Case that Aerotek filed over a year ago against Beacon Hill's former employee. Aerotek merely seeks in this action to hold Beacon Hill responsible for Ms. Obercian's alleged breach of the Agreement, and purports to seek its attorney's fees from the Maryland Case in this case, even though the Maryland Case is still pending and Aerotek is not a prevailing party and has not obtained any judgment in that case.  Allowing this case to proceed in parallel with the Maryland Case creates a significant risk of completely contradictory decisions in the two cases. If Ms. Obercian prevails in the Maryland Case, Aerotek would be estopped from claiming in this action that she breached the Agreement.[9]   Beacon Hill, who is not a party to the Maryland case, reserves its rights to all defenses in this case, including challenging the enforceability of the Agreement and the allegation that there was a breach.

---

[9] Courts have required the presence of four factors before collateral estoppel may be applied: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action. *United Industrial Workers v. Government of the Virgin Islands*, 987 F.2d 162, 169 (3d Cir.1993).

**IV.      CONCLUSION**

For the foregoing reasons, this Court should dismiss the Complaint in this action or, in the alternative, enter an order staying and enjoining these proceedings while the Maryland Case is pending.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 14, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record and serve the foregoing document upon the following:

Jonathan L. Shaw, Esquire
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102

/s/ Elizabeth S. Gallard
Elizabeth S. Gallard